Rodolfo Baiza HERNANDEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 69542.

Court of Criminal Appeals of Texas,
En Banc.

Oct. 24, 1990.

Rehearing Overruled Dec. 5, 1990.

John C. Chunn, New Braunfels, for appellant.

William L. Schroeder, Dist. Atty., New Braunfels, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

WHITE, Judge.

This is an appeal from a conviction for capital murder, specifically murder in the course of committing or attempting to commit robbery. See V.T.C.A., Penal Code § 19.03(a)(2). Appellant was sentenced to death. He brings five points of error on appeal, complaining that the trial court erred in admitting penalty-stage testimony from a psychiatrist concerning the results of appellant's pre-trial competency exam; that the trial court should have instructed the jury to disregard an alleged reference to extraneous offenses; that another reference to an extraneous offense during the penalty phase called for a mistrial; that the trial court should have stated its reasons on the record for allegedly allowing the jury to view appellant in chains; and finally that a mistrial should have been granted when several jurors were in position to see appellant in chains on several occasions outside the courtroom. After due consideration of appellant's claims, we will affirm the judgment of the trial court.

Since the sufficiency of the evidence is not challenged, only a brief recitation of the events surrounding the offense will be necessary. One day in early March, 1985, five young men in Mexico boarded a box car which would transport them into the United States. When they disembarked in San Antonio, they were approached by appellant, who asked them what they were doing. In the course of the conversation, appellant learned that the five men hoped to reach Denton, Texas, where they had an expectation of finding work, apparently at some kind of farm or ranch. Appellant then took the five illegal aliens to his house in an attempt to find them transportation to Denton.

While the men waited outside the house, appellant awakened his brother-in-law Jesse Garibay and arranged for Garibay to transport the illegal aliens in the family car for a fee.[1] Garibay drove, appellant sat in the passengers' seat, appellant's brother Richard sat between them in the front seat, and the five illegal aliens sat in the back. Richard was soon dropped off at his place of employment and the other seven men continued their journey north into Comal County.

After reaching a secluded part of the county away from any main highway, Garibay and appellant stopped the car and pretended that they were having car trouble.

---

1. There was some confusion at trial concerning the exact nature of the relationship between appellant and Garibay. Garibay's wife Susan, who is appellant's sister, testified that she and Garibay had been ceremonially married less than a month before appellant's trial. Her testimony varied as to whether a common law marriage had previously existed.

One of them opened the car trunk and took out several firearms. They asked their passengers if any of them wanted to get out and urinate; when none of them did, Garibay and appellant ordered the men out of the car at gunpoint. One man tried to run away, but appellant shot him in the back and he fell down. Appellant then ordered all five men to lie face up on the ground and to hand over all their money. He began going from one to another, taking what ever they had and shooting each one in the neck. After taking what they could and leaving all five men bleeding on the ground, appellant and Garibay sped away and returned home to San Antonio. Surprisingly, only one of the five victims, Victor Manuel Serrano Cervan, died; the other four survived and two of these testified against appellant at trial.

After appellant and Garibay returned home, Susan Garibay observed her husband covering himself with blankets and acting scared; appellant sat watching television while slinging a gun on his little finger. When a news flash came on about the shootings in Comal County, appellant told his sister that he was "a gunslinger" and that President Reagan had told him that Texas was overpopulated and had instructed him to get rid of some of San Antonio's illegal aliens. Appellant was laughing and joking while saying these things, so his sister did not take the statements seriously.

Several days later, appellant and Garibay were staying with a neighbor, Anthony Urbano. Once again, a news report appeared on television about the multiple shootings near New Braunfels. Appellant, while swinging two little guns on his fingers, then bragged to Urbano that he had shot the illegal aliens and killed one of them.

Soon after these incidents, appellant took two guns to a friend and asked the friend to sell them for him. The police later recovered these guns, and firearms experts testified that these two pistols were the ones that had fired the bullets recovered from the five victims.

■ In his first point of error, appellant complains that the trial court erred when it allowed penalty-stage psychiatric testimony from Dr. Sparks concerning appellant's pre-trial competency examination. Appellant claims that his Fifth Amendment privilege against self-incrimination should have barred the State from using his answers against him since the record failed to establish that Dr. Sparks administered the full panoply of warnings mandated in *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981).[2]

■ A criminal defendant does not waive his Fifth Amendment rights merely by requesting appointment of a court-ordered psychiatrist and submitting to the psychiatrist's competency and/or sanity examinations. *Powell v. State*, 742 S.W.2d 353, 357–358 (Tex.Cr.App.1987), *vacated and remanded on other grounds* 487 U.S. 1230, 108 S.Ct. 2891, 101 L.Ed.2d 926 (1988); *Battie v. Estelle*, 655 F.2d 692 (5th Cir.1981). Before any such psychiatric interview, the defendant's Fifth Amendment rights should be protected by warnings intended to serve as "procedural safeguards effective to secure the privilege against self-incrimination." *Smith*, 451 U.S. at 466, 101 S.Ct. at 1875, quoting *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966). Such warnings should inform the defendant that he has the right to remain silent and that his statements may later be used against him in court; if the defendant faces capital charges, this warning should specifically inform him that his statements could be used against him at the punishment stage of his capital murder trial. *Smith*, 451 U.S. at 468, 101 S.Ct. at 1876; *Ex Parte Demouchette*, 633 S.W.2d 879, 880 (Tex.Cr. App.1982); *Battie v. Estelle*, 655 F.2d 692, 697 (5th Cir.1981); *Vanderbilt v. Lynaugh*, 683 F.Supp. 1118, 1123 (E.D.Tex.1988) and cases cited therein; *cf. Purtell v. State*, 761 S.W.2d 360, 375 (Tex.Cr.App.1988),

---

**2.** The record does not demonstrate that Dr. Sparks warned appellant that anything appellant said could be used against him at a sentenc-ing proceeding. *See Powell v. Texas*, 492 U.S. 680, 109 S.Ct. 3146, 106 L.Ed.2d 551 (1989).

cert. denied 490 U.S. 1059, 109 S.Ct. 1972, 104 L.Ed.2d 441 (1989); *Satterwhite v. State,* 726 S.W.2d 81, 94 (Tex.Cr.App.1986), *vacated and remanded on other grounds* 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988).

However, the seeds of an exception to the exclusionary rule above were planted in *Smith* itself. There, the Supreme Court wrote

> When a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case. Accordingly, several Courts of Appeals have held that, under certain circumstances, a defendant can be required to submit to a sanity examination conducted by the prosecution's psychiatrist.

*Smith,* 451 U.S. at 465, 101 S.Ct. at 1874. After a string of citations supporting this proposition, the Court continued as follows:

> On the same theory, the Court of Appeals here carefully left open the "possibility that a defendant who wishes to use psychiatric evidence in his own behalf [on the issue of future dangerousness] can be precluded from using it unless he is [also] willing to be examined by a psychiatrist nominated by the State." [*Smith v. Estelle*] 602 F.2d [694] at 705 [5th Cir.1979].

*Id.,* 451 U.S. at 466, 101 S.Ct. at 1874, fn. 10. (brackets in original).

The exception planted in *Smith* was explicitly recognized by the Supreme Court in *Buchanan v. Kentucky,* 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987). In that case, the defense joined in a motion for a psychiatric examination of the defendant pursuant to a Kentucky procedure for involuntary hospitalization. Later, at trial, the defendant introduced psychiatric evidence seeking to establish the " 'mental status' defense of extreme emotional disturbance." *Id.,* 107 S.Ct. at 2918.

In such circumstances, with [defendant] not taking the stand, the Commonwealth could not respond to this defense unless it presented other psychological evidence. Accordingly, the Commonwealth asked [the witness who presented defendant's psychiatric evidence] to read excerpts of Doctor Lange's report ... The introduction of such a report for this limited rebuttal purpose does not constitute a Fifth Amendment violation.

*Id.* (brackets added). Lower court cases in accord with *Buchanan*'s holding include *Griffin v. State,* 665 S.W.2d 762, 769 (Tex. Cr.App.1983), cert. den. 465 U.S. 1051, 104 S.Ct. 1327, 79 L.Ed.2d 722 (1984); *Schneider v. Lynaugh,* 835 F.2d 570 (5th Cir.1988), cert. den. 488 U.S. 831, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988); *Griffin v. Lynaugh,* 823 F.2d 856 (5th Cir.1987), cert. den. 484 U.S. 1079, 108 S.Ct. 1059, 98 L.Ed.2d 1021 (1988); *Williams v. Lynaugh,* 809 F.2d 1063 (5th Cir.1987), cert. den. 481 U.S. 1008, 107 S.Ct. 1635, 95 L.Ed.2d 207 (1987).

In the case at bar, the State elicited redirect testimony from Dr. Sparks concerning appellant's competency evaluation in response to appellant's introduction of psychiatric evidence on cross-examination. By introducing appellant's TDC psychiatric records and soliciting Dr. Sparks' opinion concerning those records, appellant "opened the door" to the State's use of the results of his competency exam for rebuttal purposes. *Buchanan,* supra, and cases cited above. By creating the impression that appellant may have been suffering from paranoid schizophrenia, appellant paved the way for the State to rebut that impression with psychiatric testimony tending to show that appellant was instead suffering from an anti-social personality disorder. Dr. Sparks was explicitly prohibited from expressing any opinion concerning appellant's future dangerousness based on his examination of appellant, and he did not so opine.[3] Appellant's first point of error is overruled.

---

**3.** When the State began to elicit testimony concerning Dr. Sparks' competency examination, appellant immediately objected. At the subsequent hearing outside the jury's presence, the trial court ruled that the witness could testify as to his medical findings, but not as to whether appellant would likely commit future acts of violence that would constitute a danger to socie-

Appellant's second point of error complains of the court's failure to instruct the jury to disregard the very brief testimony of San Antonio police detective Gary Redding. Detective Redding testified during the guilt-innocence phase of the trial, stating that he had been on the police force for fourteen years, that he was a detective with the Crime Analysis Unit, and that the crime analysis unit maintained a computer system that kept up with "active offenders" and also stored other information. At this point, the appellant asked for a hearing outside the presence of the jury to determine whether any more of Redding's testimony should be admitted into evidence. This request was granted, and the trial court ruled that Redding's testimony was all based on hearsay and therefore inadmissible. Appellant's attorney then requested an instruction telling the jury to disregard Redding's abbreviated preliminary testimony, so that the jury would not be misled into thinking that appellant had committed extraneous offenses. Since the trial court believed that the earlier testimony had not been sufficiently developed to prejudice appellant in any way, the request for the instruction was denied.

"An accused may not be tried for some collateral crime or for being a criminal generally." *Roach v. State*, 586 S.W.2d 866, 868 (Tex.Cr.App.1979) (panel opinion). "However, there must be some type of inadmissible evidence presented of the accused's prior criminal conduct for error to be present. *Id.* In this case, Redding's testimony provides only the most indirect hint that appellant might have committed some kind of extraneous offense, and this hint is rebutted by his assertion that the computer contained "other information" besides that concerning "active offenders."

No error is shown. *See also Hill v. State*, 666 S.W.2d 663 (Tex.App.–Houston [1st Dist.] 1984), *aff'd on other grounds* 686 S.W.2d 184 (Tex.Cr.App.1985); *Mathis v. State*, 650 S.W.2d 532 (Tex.App.–Dallas 1983, pet. ref'd).[4] Appellant's second point of error is overruled.

Appellant's fifth point of error also touches upon an extraneous offense issue, so we will address it out of order. During the punishment phase of the trial, the State called Dr. Sparks to the stand as previously discussed. After establishing the witness's background, the State propounded a long hypothetical question to Sparks concerning the future dangerousness of someone with appellant's history. When reciting the assumptions that Dr. Sparks was to make in considering his question, the prosecutor asked the psychiatrist to assume that the hypothetical subject "was convicted of unauthorized use of a motor vehicle in 1971 and placed on probation"; there was, however, no evidence before the jury that appellant had ever been involved in any such incident. Appellant objected to this portion of the question, and the prosecutor agreed to withdraw the improper assumption. The trial court instructed the jury not to consider the improper part of the question for any purpose, and the witness then answered the hypothetical, as reformed after appellant's objection. Appellant now contends that the trial judge should have granted his request for a mistrial after the jury heard the improper portion of the prosecutor's question.

The asking of an improper question, by itself, will seldom call for a mistrial. *Gonzales v. State*, 685 S.W.2d 47, 49 (Tex. Cr.App.1985), cert. denied 472 U.S. 1009, 105 S.Ct. 2704, 86 L.Ed.2d 720 (1985). In

ty. The essence of Dr. Sparks' testimony before the jury was his diagnosis of anti-social personality disorder, along with a comment that had he been informed of appellant's prison psychiatric records, his diagnosis would have been a primary finding of paranoid schizophrenia in remission along with a secondary finding of an anti-social personality disorder. This testimony, while *relevant* to the issue of future dangerousness, was not a direct assertion of an expert opinion concerning future dangerousness.

4. In both of these cases, the introduction of hints of extraneous offenses was held insufficient to demonstrate an extraneous offense. In *Hill*, it was not error for the State to introduce an officer's testimony that the officer had an arrest warrant for the defendant based on another offense. *Mathis* held that it was not error for a police officer to testify that he went to the police department vice squad and obtained a picture of the defendant.

most cases, any harm from such a question may be cured by an instruction to disregard the question. *Id.* A mistrial is required when the question is "clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds." *Id.* The determination as to whether a given error calls for a mistrial must be made by examining the peculiar facts and circumstances of each case. *Id.*

During the penalty phase of the *Gonzales* case, the prosecutor asked appellant's character witness whether appellant had been "charged" with an extraneous offense. *Gonzales,* 685 S.W.2d at 48. Before the question was answered, the jury was removed from the courtroom and appellant objected to the question. The prosecutor then withdrew the question, and the court instructed the jury to disregard it. The question on appeal revolved around the propriety of the court's denial of appellant's subsequent motion for a mistrial. We held that a mistrial was not called for, since the question was asked at the penalty stage under the circumstances described above. Appellant stipulated that he had twice before been convicted of felonies similar to the one in the prosecutor's question, and the punishment assessed was in the middle of the punishment range. *Gonzales,* 685 S.W.2d at 49.

Our assessment of this case is similar to the one we made in *Gonzales.* Since the reference to the unauthorized use of a motor vehicle conviction was couched within a very long hypothetical question, since no testimony or documents were ever put before the jury indicating that the conviction had, in fact, occurred, and since the evidence showed convictions for two previous violent crimes (aggravated robberies) and a parole revocation when the crime at issue was extremely violent and the improper reference was to a crime against property, we hold that the instruction to disregard was sufficient to cure any error. *See also Coe v. State,* 683 S.W.2d 431, 435–436 (Tex. Cr.App.1984); *Kelley v. State,* 677 S.W.2d 34, 36 (Tex.Cr.App.1984).[5] Appellant's fifth point of error is overruled.[6]

■ Appellant's third and fourth points of error complain about an opportunity that the jury was given to see appellant outside the courtroom in handcuffs and shackles. Specifically, his third point of error contends that the trial court should have stated in the record its reasons for shackling appellant in the jury's presence, while his fourth point claims that a mistrial should have been granted after the jury was afforded an opportunity to view appellant in shackles outside of the courtroom.

We find no merit in either point of error. Appellant was transported in chains because of a bomb threat to the Comal County courthouse on September 23, 1985. The trial had to be moved to Honors Hall on Seguin Avenue in New Braunfels. Appellant was transported from the courthouse to the new venue by law enforcement officials while he was wearing shackles. Appellant's Bill of Exceptions, filed with and approved by the trial court, demonstrates only that jurors were in a position to see appellant in the Honors Hall parking lot and hall, not that any jurors actually saw him. Even if we assume that some jurors

**5.** In *Coe,* defense counsel asked an officer who conducted a lineup if two particular witnesses had made a positive identification of the defendant and the officer replied "No, sir; they were *the complaining witnesses in the other robberies.*" We held that defendant's motion for a mistrial was properly denied.

The defendant in *Kelley* was convicted of aggravated robbery, but he was apprehended upon suspicion of driving while intoxicated. The arresting officer testified that he believed appellant to be under the influence of drugs, in part because he saw needle marks on defendant's arm. An instruction for the jury to disregard

the reference to the extraneous offense was held sufficient to cure any error.

**6.** This case is not like *Crawford v. State,* 603 S.W.2d 874 (Tex.Cr.App.1980) (panel plurality opinion), cited by appellant. In *Crawford,* the defendant was on trial for murdering her husband, and the contested issues revolved around whether the circumstances surrounding the killing established either self-defense or voluntary manslaughter. *Id.* at 875. When a witness referred to another occasion on which the defendant attempted to poison the deceased, Judge Phillips wrote that a mistrial request should have been granted.

did see appellant being transported under restraint, no error is shown since the encounter was momentary, inadvertent, fortuitous, and away from the courtroom. *Clark v. State,* 717 S.W.2d 910, 918–919 (Tex.Cr.App.1986), cert. den. 481 U.S. 1059, 107 S.Ct. 2202, 95 L.Ed.2d 857 (1987); *Wright v. Texas,* 533 F.2d 185 (5th Cir. 1976). Cases cited by appellant requiring the trial court to affirmatively state on the record why security measures are being used do not apply in situations like this one; they refer to use of shackles *in the courtroom in front of the jury.* See, e.g., *United States v. Theriault,* 531 F.2d 281, 285 (5th Cir.1976), cert. den. 429 U.S. 898, 97 S.Ct. 262, 50 L.Ed.2d 182 (1976). Appellant's third and fourth points of error are overruled.

Having determined that appellant's points of error are without merit, we affirm the judgment of the trial court.

CLINTON, J., concurs in the result.

TEAGUE and STURNS, JJ., not participating.