# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00362-CR

**Carl Miller, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT NO. 1010226, HONORABLE JON WISSER, JUDGE PRESIDING

A jury convicted Carl Miller of murder. *See* Tex. Pen. Code Ann.'' 21.11 (West Supp. 2002). The court assessed sentence at thirty years in prison. By four points of error, appellant contends that the evidence is legally insufficient to support the jury=s rejection of his self-defense claim, and that the court erred by denying his motions for directed verdict, for mistrial based on a prosecutor=s comment, and for new trial based on his being shackled in view of the jury. We will affirm the judgment.

## BACKGROUND

Appellant admits that he killed Terry Burleson by stabbing him in the chest. The only factual dispute at trial was whether appellant acted in self-defense.

Appellant testified that he spent Saturday, August 18, 2000, making the rounds of friends and family, saying his goodbyes before leaving for California the next day. He drank three beers that afternoon. He went out that night around ten o=clock, looking to have a good time and say more goodbyes.

He had a beer and saw a friend who, around midnight, invited him to a club. Appellant followed him by car to the new club.

On the way, appellant saw his friend=s car outside the Aristocrat Club, so he stopped. He did not have the five-dollar cover charge, so he waited for his friend outside. He chatted with some young women outside the club. Burleson stepped up behind the young women and told appellant that the women were with him; Burleson cursed at appellant, who told Burleson they were not well-acquainted enough to justify such language. Burleson invited appellant to talk with him around the corner. Appellant followed him and James Cleveland past appellant=s truck, around the corner, and onto a concrete slab behind the club. (Appellant told police after the altercation that Cleveland followed him.) Appellant then removed his hat and placed it on the ground so he could have enough light to clean his glasses in the dim light. He stepped between Burleson and Cleveland.

Appellant said that Burleson kicked him twice in the chest and once in the leg, knocking him backwards. He said a serious leg injury which required him to wear a leg brace prevented him from running away. Appellant said that Cleveland was blocking his exit and may have hit him. Appellant testified that he was not angry, but feared for his life, so he pulled a knife and slashed at Burleson. Appellant stabbed Burleson in the chest, leaning into him and pushing the blade in 2-3/4 inches deep, piercing an artery and part of the heart. Burleson and Cleveland retreated, and appellant also walked back toward the front of the club. The stabbing killed Burleson.

Robbie Davis, who dated Burleson in the 1980s and early 1990s, said that he was very jealous and became physically violent when drinking. She said they were both members of the motorcycle

**2**

club, the Humping People, but she quit the club because of embarrassing and unsafe situations that occurred when they were at functions. She said her having dated appellant in the 1960s had no effect on her testimony.

Other witnesses agreed with her characterization of Burleson. Douglas Hurst, appellant=s former brother-in-law, testified that after the altercation he heard that Burleson was a violent man. He knew appellant not to be violent, even when drunk. Glenn Crawford, appellant=s cousin, agreed with Hurst=s characterization of Burleson, and added that he would stay away from all of the motorcycle club members because of their reputation. Lee Arthur Thomas agreed that Burleson had a reputation for drunken violence, but that he had only seen him get loud when drunk.

Witnesses who saw appellant after the altercation confirmed that he was injured. Doctor Daniel Hart testified that appellant had swelling on the side of his face after his arrest. He said the nurse=s chart showed that appellant was still under the influence of alcohol more than four hours after arrest. Austin Police Department detective Richard Faithful testified that he saw a scratch on appellant=s forehead and found a footprint on appellant=s shorts. Although he did not see any other injuries, he said appellant told him that he got kicked or hit in the knee, the wrist, and the head, and that his midsection hurt.

Other witnesses agreed with the broad outline of events appellant described, but disagreed with particulars that bear on the critical element of appellant=s state of mind.

James Sullivan, then a security guard, witnessed part of the fight from his car. He was driving by when he saw the altercation behind the bar beginning. He saw a man throw his hat down and approach another who was already on the slab, ready to fight; Sullivan said that, although the men were

**3**

about the same height, the man who was waiting on the slab was much more muscular. He said it appeared that words were exchanged, then the man who was on the slab threw a punch which missed, and the fight began. A third man was standing nearby; Sullivan never saw him engage in the fight. Sullivan also said that there were many routes to get away from the location of the fight. Upon seeing Sullivan, the men stopped the fight and the man who threw his hat down went to pick it up. Sullivan proceeded to the intersection and, seeing a police car, flashed his headlights to get the officer=s attention.

Noticing that no one had come to the street from the fight location, Sullivan backed up and saw that the fight had resumed. He said that the more muscular man seemed to be landing more punches, but that neither was backing away. Sullivan saw the man who had thrown the hat pull something out of his pocket and slap at the other man with it. The other man hunched over, and the third man ran to the muscular man, grabbed him, and took him away. The second man walked over, picked up his hat, and walked away. The police arrived, and the third man came over and said his friend had been stabbed.

Police officers who responded to the scene testified. APD officer Jerry Sullivan testified that the security guard (his brother) told him that three men were fighting behind the club. Officer Sullivan said appellant was walking without a limp, but did not see him try to run and did not know whether he could run. Officer Sullivan admitted that a person could be kicked to death. APD officer Myecha Francis said Burleson had two stab wounds in the chest, one on his head, and one on his arm. He was bleeding profusely and barely breathing. She did not detect any odor of alcohol on his breath. APD officer William Mercado, who arrested appellant, said he did not notice appellant limping, nor did he notice whether appellant=s forehead was scratched.

**4**

Melinda Dawson testified that she was standing outside the Aristocrat just after midnight. She said that, after appellant declined to pay the admission fee to the club, he and Burleson got into an argument. She saw Burleson walk around the corner and appellant walk to a car, but then walk on further down the street. She asked James Cleveland to go check on his friend Burleson; this conflicted with her earlier statement to police in which she could not recall whether Cleveland went around the corner before or after appellant. She said Burleson had been drinking, but she did not know how much.

Rod Selby, who was working the door of the Aristocrat, testified that appellant got irate when they requested that he pay the five-dollar cover charge or step out of line. He testified that he did not see Burleson intoxicated that night. He said that he and Burleson were members of the Humping People and had spent a lot of time together; he testified that members would try to break up fights involving other members or come to a fellow member=s defense if necessary.

James Cleveland also testified that he was a member of the motorcycle club with Selby, Burleson, and other witnesses. He thought Burleson might have had two beers on the night of the altercation. He said appellant got angry when Cleveland refused to buy some jewelry from him. Appellant=s mood did not improve after trying to get into the club. Cleveland then saw and partly overheard appellant and Burleson having a conversation about some women; he saw Burleson wave some money at appellant. Cleveland testified that he saw Burleson walk around the corner followed by appellant. Cleveland followed them (he did not recall being asked to follow them) and saw appellant swinging at Burleson and Burleson kicking appellant. Cleveland separated them after seeing the police nearby, not realizing that Burleson had been stabbed. He said he did not otherwise participate in the fight.

**5**

# DISCUSSION

Appellant raises four point of error. By two points, he challenges the evidentiary support for the judgment. By the remaining two points, he challenges the court=s refusal to grant a mistrial or new trial despite his being forced to wear a leg restraint and despite the prosecutor highlighting that restraint to the jury and commenting on the reason for it.

## *Sufficiency of the evidence*

Appellant raises two points of error that are related by their attacks on the evidence to support findings on the elements of the offense. By his first point of error, appellant contends that the evidence is legally insufficient to support the jury=s verdict because he proved self-defense. By his fourth point of error, he contends that the court erred by denying his motion for instructed verdict.

The elements of the offense and defense are critical to both reviews. A person commits murder if he intentionally or knowingly causes the death of an individual or if, while intending to cause serious bodily injury, he commits an act clearly dangerous to human life that causes an individual=s death. *See* Tex. Pen. Code Ann. ' 19.01(b) (West 1994). The penal code permits a person to use force against another when and to the degree that he reasonably believes that the force is immediately necessary to protect himself against the other=s use of unlawful force. *See id*. ' 9.31(a) (West Supp. 2002). The person is not justified in using force in response to verbal provocation alone or if the person provoked the other=s use of force (unless the initiator abandons the encounter). *Id*. ' 9.31(b). A person is justified in using deadly force to protect himself if he is justified in using force and if a reasonable person in his position would

**6**

not have retreated, when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other=s use or attempted use of unlawful deadly force. *See id.* ' 9.32.

In reviewing the legal sufficiency of the evidence, Athe relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.@ *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *accord Patrick v. State*, 906 S.W.2d 481, 486 (Tex. Crim. App. 1995). In resolving whether the evidence supports the jury=s rejection of the self-defense claim, we look not to whether evidence refuted appellant=s self-defense testimony, but whether, after viewing all the evidence most favorably to the prosecution, any rational trier of fact could have found the elements of murder beyond a reasonable doubt and found against appellant on the self-defense issue beyond a reasonable doubt. *See Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). Evidence consistent with self-defense does not render the State=s evidence insufficient because the credibility determination of such evidence is solely within the jury=s province and the jury is free to accept or reject the defensive evidence. *Id*. A jury verdict of guilty is an implicit finding rejecting the defendant=s self-defense theory. *Id*.; *Jenkins v. State*, 740 S.W.2d 435, 438 (Tex. Crim. App. 1983).

We review the denial of a motion for instructed verdict by the same standard used for a challenge to the legal sufficiency of the evidence. *See Youens v. State*, 988 S.W.2d 404, 407 (Tex. App.CHouston [1st Dist.] 1999, no pet.); *see also Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993).

As set out above, appellant testified that he was being attacked by two men, that the bigger, stronger Burleson kicked him in the chest and leg, that he was injured, that he feared for his life, that he could not run away because of his injury, that he pulled the knife to defend himself, and that he had no intent to kill Burleson. Other witnesses confirmed that Burleson was bigger, that he was kicking appellant, that appellant was injured, and that a person can be killed by being kicked.

There was also testimony that appellant followed Burleson to the site of the fight and provoked the physical altercation by throwing his hat down and advancing toward Burleson. Appellant admitted that he walked past his truck on his way to meet Burleson behind the bar. Security guard Sullivan testified that the fight broke up momentarily, but resumed. There was testimony that Cleveland did not participate in the fight. Although it is undisputed that Burleson kicked appellant, there is no testimony that the blows necessarily required deadly force to resist. Appellant himself testified that he stabbed Burleson multiple times and that he leaned into him when stabbing him in the chest. Murder does not require an intent to kill, but only commission of acts clearly dangerous to human life with an intent to cause serious bodily injury.

We conclude that the record as a whole shows that a rational jury could have rejected appellant=s self-defense claim and found the elements of murder. Evidence supports the jury=s verdict. We overrule points one and four.

**8**

*Denial of motion for mistrial*

By point of error two, appellant contends that the court erred by denying his motion for mistrial. We review the denial for an abuse of discretion. *Trevino v. State*, 991 S.W.2d 849, 851 (Tex. Crim. App. 1999). A mistrial is a device used to halt trial proceedings in extreme cases when error is so prejudicial as to appear calculated to inflame the minds of the jury members. *Moore v. State*, 882 S.W.2d 844, 847 (Tex. Crim. App. 1994). We must look at the particular facts of the case. *Hernandez v. State*, 805 S.W.2d 409, 414 (Tex. Crim. App. 1990). The court can cure harm and avert a mistrial by instructing the jury to disregard a question, argument, or evidence. *Id.*; *see also Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). Also, where the same evidence or argument is presented during trial without objection, the allowance of that evidence or argument later is not reversible error. *McFarland v. State*, 845 S.W.2d 824, 840 (Tex. Crim. App. 1992).

Appellant contends that the court should have granted his motion for mistrial based on a comment made by Judy Shipway, the prosecutor. The following exchange occurred during defense attorney Steve Orr=s redirect examination of appellant:

Q. Okay. And did you tell me you had a shackle on your leg there?

A. Yes.

Q. You did?

A. Did I tell you I had a shackle?

Q. Yeah.

A. No.

Q. Okay. That=s what I=m getting at. And you don=t C you don=t limp when you=re normally walking without that thing on your leg, do you, sir?

A. Somewhat. I try not to. I practice not limping.

Q. Okay. But you can=t run with or without a shackle.

A. No.

Q. Okay. And you=ve been in jail this whole time, correct, sir?

A. Yes.

Q. Your bond was $80,000.

A. Yes.

Q. You couldn=t make that, right?

A. No, I couldn=t.

MS. SHIPWAY: Judge, I=m going to object. What is the relevance of that?

MR. ORR: It=s already in evidence on some of the paperwork they put in, Your Honor. I=d like the jury to know why he=s got a shackle on his leg.

MS. SHIPWAY: Well, he=s got a shackle on his leg because he murdered a man.

THE COURT: We=ll sustain the objection and ask the jurors to disregard the State=s last remark.

MR. ORR: And I move for a mistrial, Your Honor.

THE COURT: That request will be denied. But the jurors should disregard that remark. We=ll overrule the objection.

Q. (By Mr. Orr) Do you know whether it=s normal practice, I guess, for people who are on trial in jail to have a shackle on their leg?

A.  I don=t think so.  I don=tCI don=t really know.

Q.  You don=t know?

THE COURT:    Well, the record should reflect that it=s the practice of every inmate who=s going to jury trial to have one of those devices placed on him. Thank you.

Appellant=s argument ignores questions, testimony, and demonstrations already in the record during the State=s cross-examination of appellant:

Q.  And that videotape was made the same night of the murder, correct?

A.  Yes.

Q.  Would you agree with me that your memory of whatCwhat had happened that night was probably better back on the night that it happened that it is now?

A.  I can=t say that because things happened so fast that night, and after being told that I had just murdered someone, I was a little distraught.  There might be a lot ofCa few things that=s out of sync.

Later in the same cross-examination, the State asked permission to show the ankle restraint in order to demonstrate to the jury a reason for appellant=s limp in court apart from his motorcycle crash injury; appellant had no objection.

The prosecutor=s comment before the jury in the guilt/innocence phase of a murder trial that the appellant had Amurdered a man@ was improper.  The court nevertheless alleviated any harm by immediately instructing the jury to disregard the prosecutor=s comment.  After denying appellant=s motion for mistrial, the court reiterated the instruction to disregard.  After further questioning of appellant by appellant=s

**11**

counsel regarding the shackle, the court further diminished the impact of the shackling and the comment by telling the jury that all inmates in his courtroom are shackled. The court=s actions rendered the prosecutor=s comment harmless. We overrule point two.

### *Denial of new trial*

By point of error three, appellant complains that the court erred by denying his motion for new trial. Appellant argued in his motion that forcing him to wear an ankle restraint and allowing the prosecution to refer to it violated his constitutional right to due process and the presumption of innocence. The record indicates that the court did not affirmatively overrule the motion for new trial, but allowed it to be overruled by operation of law.

Appellant failed to preserve this point by failing to present the motion for new trial to the district court=s attention after filing it. *See* Tex. R. App. P. 21.6. The presentment requirement Ameans the record must show the movant for a new trial sustained the burden of actually delivering the motion for new trial to the trial court or otherwise bringing the motion to the attention or actual notice of the trial court.@ *Carranza v. State*, 960 S.W.2d 76, 79 (Tex. Crim. App. 1998) (applying former Tex. R. App. P. 31(c)(1) (using essentially same language as current rule)); *Coronado v. State*, 25 S.W.3d 806, 810 (Tex. App.CWaco 2000, pet ref=d). There is no indication in the record that appellant presented this motion to the trial court after filing it. The error is not preserved.

Even if he had presented the motion timely and the court had overruled it, we would not reverse the conviction. We review the denial of a motion for new trial for an abuse of discretion. *See Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001). He did not complain on the record about

wearing the restraint. His counsel assented to the State showing the restraint to the jury to demonstrate at least part of the reason he was limping in trial. His counsel asked him questions about the effect the restraint had on his mobility. The court told the jury that appellant=s wearing the restraint was standard for jury trials. Appellant cannot wear the restraint during trial without objection, assent to showing the restraint to the jury without objection, and affirmatively discuss wearing the restraint before the jury, then gain reversal of the verdict by arguing for the first time after trial that the restraint was unconstitutional. We find no abuse of discretion in denying the motion under these circumstances. We overrule point three.

## CONCLUSION

Having overruled all of appellant=s asserted errors, we affirm the judgment.

Bea Ann Smith, Justice

Before Chief Justice Aboussie, B. A. Smith and Yeakel

Affirmed

Filed: August 30, 2002

Do Not Publish