

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00046-CR

---

EQUAILE DE-VAN WESTMORELAND A/K/A EQUAILE WESTMORELAND                                    APPELLANT

V.

THE STATE OF TEXAS                                    STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In one point, Appellant Equaile De-Van Westmoreland a/k/a Equaile Westmoreland asserts that the trial court erred by failing to grant his motions for mistrial during the punishment phase of trial. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Factual and Procedural History

Richard Dowell, the eighteen-year-old victim in this case, was friends with Westmoreland, one of the leaders of "Gang B," which was allied with "Gang A."[2] Dowell was known by the police as a member of Gang B.

Happiness Osunde associated with "Gang C," which was on good terms with "Gang D." On July 9, 2007, Dowell called Osunde, seeking to set up a rematch fight with Desmond Blair of Gang C. Gangs C and D arranged to meet Gangs A and B for a fistfight that evening. Witnesses estimated that there were around 100 gang members present that evening for the fight, and fighting between the gangs erupted before Dowell and Blair could have their rematch: Osunde testified that the fight began when someone from the Gang A-B side threw a bottle that hit someone on the Gang C-D side. Gang A members Percy Demerson and Lamar Stone testified that the Gang C-D side threw the bottles.

Osunde said that when the fighting began, he heard Westmoreland say, "f--- that," and that he saw Westmoreland draw a gun—either a nine-millimeter or a .380—from his waist, point it at the crowd, and begin shooting.[3] Other members

---

[2]We have substituted letters for the gangs' actual names.

[3]A minimum of three guns were fired during the incident, and police found several spent nine-millimeter and .380 casings at the crime scene. The same nine-millimeter gun was responsible for discharging many—but not all—of the nine-millimeter casings, and five .380 caliber casings were fired from the same .380 caliber weapon. The deputy medical examiner testified that the gunshot that killed Dowell could have been from either a nine-millimeter or a .380 caliber weapon.

2

of Gangs A and B fired their guns too.  Stone testified that Demerson yelled to the Gang A and B members with guns, "Shoot, shoot, they're throwing bottles," and that he heard Westmoreland say, "Get out the way."  As soon as Stone heard Westmoreland say this, shots were fired.  Demerson testified that Westmoreland did not shoot at the crowd, but he also admitted that he had told Arlington police officers that the shots came from where Westmoreland was standing and that Westmoreland shot level into the crowd.[4]

Dowell was in the crowd in the area where Westmoreland fired his gun, and Stone testified that when Westmoreland started shooting, Dowell was in the line of fire of Westmoreland's gun.  Dowell was hit by gunfire; he later died at the hospital during surgery.  Westmoreland was charged with engaging in organized criminal activity (murder).  A jury found him guilty and assessed twenty-seven years' confinement as punishment.[5]  This appeal followed.

---

[4]Arlington Police Detective Tommy Lenoir testified that he conducted three interviews with Demerson, who told him that Westmoreland was Dowell's shooter.  All three interviews were admitted in evidence and published to the jury.

[5]Murder is a first-degree felony.  *See* Tex. Penal Code Ann. § 19.02(c) (West 2011); *see also id.* § 71.02(a)(1), (c) (West 2011) (stating that a person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, he commits or conspires to commit murder; the punishment range is the same as for murder).  The punishment range for a first-degree felony is from five to ninety-nine years or life and a fine of up to $10,000.  *See id.* § 12.32 (West 2011).

### III. Motions for Mistrial

Westmoreland complains that the trial court abused its discretion by denying his motions for mistrial during the punishment phase of trial "upon the erroneous introduction by the State of evidence concerning an allegation against Appellant that was inadmissible."

### A. Standard of Review

We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Russeau v. State*, 171 S.W.3d 871, 885 (Tex. Crim. App. 2005), *cert. denied*, 548 U.S. 926 (2006); *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1070 (2000). Generally, the declaration of a mistrial is appropriate when the improperly-offered statement of evidence is "clearly calculated to inflame the members of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on the minds of the jury." *Ladd*, 3 S.W.3d at 567; *Hernandez v. State*, 805 S.W.2d 409, 414 (Tex. Crim. App. 1990), *cert. denied*, 500 U.S. 960 (1991). That is to say, the offending statement or erroneously offered evidence must be so prejudicial or incurable that an instruction to disregard the statement or evidence cannot withdraw the impression produced on the minds of the jurors, and hence, the expenditure of further time and expense would be wasteful and futile. *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), *cert. denied*, 542 U.S. 905 (2004).

4

To determine whether a mistrial should have been granted, we review the case's facts and circumstances in light of the arguments that were before the trial court at the time the ruling was made, bearing in mind that the jury is presumed to have followed the trial court's instruction to disregard. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004); *Hinojosa v. State*, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999); *Hernandez*, 805 S.W.2d at 414; *Waldo v. State*, 746 S.W.2d 750, 754 (Tex. Crim. App. 1998). Generally, a prompt instruction to disregard will cure error associated with an improper question and answer. *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000).

## B. Unadjudicated Offense

During the punishment phase of trial, Westmoreland's counsel stated that he had "[n]o objection" to State's Exhibits 140 and 141, and the trial court admitted these exhibits into evidence. These exhibits contained court documents concerning the revocation of Westmoreland's deferred adjudications in two misdemeanor offenses (possession of marihuana under two ounces and criminal trespass), including copies of the State's motions to adjudicate guilt based on alleged violations of the terms of Westmoreland's community supervision. At a hearing on these motions, Westmoreland had entered pleas of true to an allegation that he had violated the terms of his community supervision. Following the admission of these exhibits, the State, again without objection by Westmoreland, read the following into the record:

5

Allegations in both [State's Exhibits 140 and 141] for the petition to revoke his probation constitute the offense here of murder and while in the course of committing theft of property and with intent to obtain or maintain control of said property, the defendant intentionally or knowingly caused serious bodily injury to Pauline Cobb, an elderly woman over the age of 65 in Gregg County, Texas, on or about the 20th day of March 2008.

Subsequently, during the cross-examination of two defense witnesses, the State asked about the Pauline Cobb incident. During cross-examination of defense witness Reverend Willie Burton,[6] the following took place:

[State]: As it relates to the revocation of his probation, you were in here for that being prosecuted by Ms. Simpson. *Were you aware of the situation involving the aggravated robbery of the elderly lady in Gregg County –*

[Witness]: No, sir, I wasn't.

[State]: -- that he pled true to?

[Witness]: Right, I didn't know about that.

[Defense Counsel]: Your Honor, I'm going to object to that.

[Emphasis added.] After a bench conference, during which one of the prosecutors said, "I think we inadvertently published allegations," the trial court

---

[6]Reverend Burton testified during his direct examination that he had known Westmoreland as a member of the youth choir at his church in Amarillo, that Westmoreland had a solid upbringing, and that Westmoreland would do well on community supervision based on his upbringing. During cross-examination, before reaching the Pauline Cobb incident, the prosecutor asked the reverend if he was aware of Westmoreland's involvement in gang-related fights at a shopping mall around February 4, 2006, and at a recreation center around November 11, 2006. Reverend Burton said no to both.

sustained Westmoreland's objection, instructed the jury to disregard the State's last statement, and told the jury, "It is as if it did not happen."

Outside of the jury's presence, the State acknowledged that there had been a misunderstanding about whether Westmoreland pleaded true to the charge involving Cobb, and the trial court stated, "[Y]our question was about the robbery of an elderly lady. There is no allegation of an elderly person in this— that is specifically going into the facts, and you-all know that that's not allowed."[7] Westmoreland's counsel moved for a mistrial, which the trial court denied. The prosecutor then asked Reverend Burton if he knew that Westmoreland was in a criminal street gang, and Reverend Burton said no.

Westmoreland objected again when the prosecutor asked defense witness Cynthia Westmoreland, Westmoreland's mother,[8] the following:

---

[7]The admission of these unproven allegations constituted proof of an extraneous offense on a non-final conviction and would not have been admissible over a timely and specific objection. *See, e.g., Harris v. State*, No. 01-88-00991-CR, 1990 WL 39468, at *2–3 (Tex. App.—Houston [1st Dist.] Apr. 5, 1990, pet. ref'd) (not designated for publication) (holding that appellant's failure to object to the admission of unproved burglary allegations submitted as the basis for revocation of appellant's probation waived any error).

[8]During her direct examination, Cynthia testified that Westmoreland was a good son and that he had "never been disrespectful to any elderly person that [she] know[s]." During cross-examination, Cynthia stated that prior to the shooting, she had never heard of her son's involvement in Gang B, that she knew he had never been a gang member and had not been involved in Gang B, that Westmoreland had not been involved in a gang-related fight at a shopping mall on February 4, 2006, and that he was not involved in a gang-related fight at a recreation center on November 11, 2006. She denied being aware that Westmoreland had pleaded guilty to the misdemeanor criminal trespass charge, but she knew that he had pleaded guilty to the possession of marihuana charge.

7

[State]: You know that [Westmoreland] was arrested for an offense in Gregg County, Texas?

[Witness]: Yes. They was [sic] doing stops, pulling people over for insurance.

[State]: And the offense was aggravated robbery

[Witness]: That's what they say it is.

[State]: And I'm not alleging there was a weapon, but did you know who the victim was?

[Defense counsel]: Your Honor, again, I object.

The trial court sustained Westmoreland's objection and instructed the jury to disregard the last statement by the State.

When Westmoreland moved for a mistrial, the trial court asked both sides' attorneys to approach the bench and then asked the State, "You have a reason to go into this again?" The prosecutor replied, "Absolutely. . . . They are asking for probation. I am entitled to test her knowledge of his pending legal issues. He is still going to have to face these charges after he's done here." The trial court asked, "How would she know anything about it?" and the prosecutor replied, "She's his mother." The trial court said that it was hearsay and then denied Westmoreland's motion for mistrial.

## C. Analysis

Westmoreland articulates his complaint thusly:

The trial [c]ourt's instruction to the jury to disregard the erroneous evidence may well have been sufficient to vitiate the harm in the first instance of error. However, when the State repeated its misconduct, requiring the trial [c]ourt to once again instruct the jury, that

8

instruction has less ameliorating effect. To uphold this misconduct by failing to reverse this case for a new trial on punishment would encourage the State to repeat this form of conduct. Here, the erroneous evidence was not a slight claim of misbehavior on the part of [Westmoreland], but a claim that he had robbed an elderly person to the extent of causing [her] serious bodily injury. While we may speculate that after [the] second infraction by the State that the jury somehow overlooked this claim, it strains reason to believe that was the case.

Westmoreland cites *Cliburn v. State*, 661 S.W.2d 731, 732 (Tex. Crim. App. 1983), to support his argument.[9]

We first observe that the complained-of allegations concerning the Pauline Cobb incident were already before the jury and had been admitted without objection prior to Reverend Burton's or Cynthia's testimonies, Westmoreland's objections, and Westmoreland's motions for mistrial during their testimonies. Specifically, as previously recounted, during the punishment phase of trial, during the reading of State's Exhibits 140 and 141 into evidence, the prosecutor recited, without objection:

Allegations in both [exhibits 140 and 141] for the petition to revoke his probation constitute the offense here of murder and while in the course of committing theft of property and with intent to obtain or maintain control of said property, *the defendant intentionally or knowingly caused serious bodily injury to Pauline Cobb, an elderly woman over the age of 65 in Gregg County, Texas, on or about the 20th day of March 2008.*

---

[9]In *Cliburn*, the court stated that the State was entitled to show that probation had been revoked but not the details of the offense upon which the revocation was based. 661 S.W.2d at 732.

[Emphasis added.] *See Rico v. State*, 707 S.W.2d 549, 553 n.1 (Tex. Crim. App. 1983) (distinguishing *Cliburn* based on appellant's failure to object to the admission of an unadjudicated extraneous offense contained in a motion to revoke probation); *Ytuarte v. State*, No. 03-01-00168-CR, 2002 WL 820927, at *2 (Tex. App.—Austin May 2, 2002, pet. ref'd) (not designated for publication) (stating that although the State incorrectly presented documents concerning the details of the offenses used to revoke appellant's probation, appellant did not object when the evidence was presented and therefore waived error); *see also* Tex. R. App. P. 33.1.

Further, because the jury was already aware of the Pauline Cobb incident when the State began cross-examining Reverend Burton and Cynthia, Westmoreland's only possible objections to the questions to these witnesses concerned whether *Burton was aware Westmoreland "pled true to"* the allegations and whether *Cynthia was aware that Westmoreland was arrested for the offense*. And the trial court sustained the objections to both questions and instructed the jury to disregard each time. *See Russeau*, 171 S.W.3d at 885 ("The asking of an improper question will seldom call for a mistrial, because, in most cases, any harm can be cured by an instruction to disregard."). Under the circumstances, we cannot say that the questions Westmoreland complains of—particularly the second question—were of "such a character as to suggest the impossibility of withdrawing the impression produced on the minds of the jury," as the underlying basis for both objections was the State's unobjected-to recitation

10

that Westmoreland had caused serious bodily injury to an elderly woman while robbing her. *See Hernandez*, 805 S.W.2d at 414; *see also Rico*, 707 S.W.2d at 553 n.1; *Yuarte*, 2002 WL 820927, at \*2; *Harris*, 1990 WL 39468, at \*2–3. Therefore, we hold that the trial court did not abuse its discretion by denying the motions for mistrial, and we overrule Westmoreland's single point.

## IV. Conclusion

Having overruled Westmoreland's single point, we affirm the trial court's judgment.

PER CURIAM

PANEL:  MCCOY, WALKER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  July 7, 2011