02-10-046-CR








 




 
 
 
 
 
  
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
 
 




 

 

NO. 02-10-00046-CR

 

 




 
 
 Equaile De-Van Westmoreland a/k/a Equaile
 Westmoreland
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 




 

 

----------

 

FROM Criminal
District Court No. 1 OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I. 
Introduction

          In
one point, Appellant Equaile De-Van Westmoreland a/k/a Equaile Westmoreland
asserts that the trial court erred by failing to grant his motions for mistrial
during the punishment phase of trial.  We affirm.

 

II. 
Factual and Procedural History

          Richard
Dowell, the eighteen-year-old victim in this case, was friends with
Westmoreland, one of the leaders of “Gang B,” which was allied with “Gang A.”[2]  Dowell
was known by the police as a member of Gang B.

Happiness
Osunde associated with “Gang C,” which was on good terms with “Gang D.”  On
July 9, 2007, Dowell called Osunde, seeking to set up a rematch fight with
Desmond Blair of Gang C.  Gangs C and D arranged to meet Gangs A and B for a
fistfight that evening.  Witnesses estimated that there were around 100 gang members
present that evening for the fight, and fighting between the gangs erupted
before Dowell and Blair could have their rematch:  Osunde testified that the
fight began when someone from the Gang A-B side threw a bottle that hit someone
on the Gang C-D side.  Gang A members Percy Demerson and Lamar Stone testified
that the Gang C-D side threw the bottles.

Osunde
said that when the fighting began, he heard Westmoreland say, “f--- that,” and
that he saw Westmoreland draw a gun—either a nine-millimeter or a .380—from his
waist, point it at the crowd, and begin shooting.[3]  Other
members of Gangs A and B fired their guns too.  Stone testified that Demerson
yelled to the Gang A and B members with guns, “Shoot, shoot, they’re throwing
bottles,” and that he heard Westmoreland say, “Get out the way.”  As soon as Stone
heard Westmoreland say this, shots were fired.  Demerson testified that
Westmoreland did not shoot at the crowd, but he also admitted that he had told
Arlington police officers that the shots came from where Westmoreland was
standing and that Westmoreland shot level into the crowd.[4]

Dowell
was in the crowd in the area where Westmoreland fired his gun, and Stone
testified that when Westmoreland started shooting, Dowell was in the line of
fire of Westmoreland’s gun.  Dowell was hit by gunfire; he later died at the
hospital during surgery.  Westmoreland was charged with engaging in organized
criminal activity (murder).  A jury found him guilty and assessed
twenty-seven years’ confinement as punishment.[5]  This appeal followed.

 

 

III. 
Motions for Mistrial

          Westmoreland
complains that the trial court abused its discretion by denying his motions for
mistrial during the punishment phase of trial “upon the erroneous introduction
by the State of evidence concerning an allegation against Appellant that was
inadmissible.”

A. 
Standard of Review

We
review a trial court’s denial of a motion for mistrial for an abuse of
discretion.  Russeau v. State, 171 S.W.3d 871, 885 (Tex. Crim. App.
2005), cert. denied, 548 U.S. 926 (2006); Ladd v. State, 3 S.W.3d
547, 567 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1070 (2000). 
Generally, the declaration of a mistrial is appropriate when the improperly-offered
statement of evidence is “clearly calculated to inflame the members of the jury
and is of such a character as to suggest the impossibility of withdrawing the
impression produced on the minds of the jury.”  Ladd, 3 S.W.3d at 567; Hernandez
v. State, 805 S.W.2d 409, 414 (Tex. Crim. App. 1990), cert. denied, 500
U.S. 960 (1991).  That is to say, the offending statement or erroneously
offered evidence must be so prejudicial or incurable that an instruction to
disregard the statement or evidence cannot withdraw the impression produced on
the minds of the jurors, and hence, the expenditure of further time and expense
would be wasteful and futile.  Simpson v. State, 119 S.W.3d 262, 272
(Tex. Crim. App. 2003), cert. denied, 542 U.S. 905 (2004).  

To
determine whether a mistrial should have been granted, we review the case’s
facts and circumstances in light of the arguments that were before the trial
court at the time the ruling was made, bearing in mind that the jury is
presumed to have followed the trial court’s instruction to disregard.  Wead
v. State, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004); Hinojosa v. State,
4 S.W.3d 240, 253 (Tex. Crim. App. 1999); Hernandez, 805 S.W.2d at 414; Waldo
v. State, 746 S.W.2d 750, 754 (Tex. Crim. App. 1998).  Generally, a prompt
instruction to disregard will cure error associated with an improper question
and answer.  Ovalle v. State, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000).

B. 
Unadjudicated Offense

During
the punishment phase of trial, Westmoreland’s counsel stated that he had “[n]o
objection” to State’s Exhibits 140 and 141, and the trial court admitted these
exhibits into evidence.  These exhibits contained court documents concerning
the revocation of Westmoreland’s deferred adjudications in two misdemeanor
offenses (possession of marihuana under two ounces and criminal trespass), including
copies of the State’s motions to adjudicate guilt based on alleged violations
of the terms of Westmoreland’s community supervision.  At a hearing on these
motions, Westmoreland had entered pleas of true to an allegation that he had
violated the terms of his community supervision.  Following the admission of
these exhibits, the State, again without objection by Westmoreland, read the
following into the record:

Allegations in both [State’s
Exhibits 140 and 141] for the petition to revoke his probation constitute the
offense here of murder and while in the course of committing theft of property
and with intent to obtain or maintain control of said property, the defendant
intentionally or knowingly caused serious bodily injury to Pauline Cobb, an
elderly woman over the age of 65 in Gregg County, Texas, on or about the 20th
day of March 2008.  

 

Subsequently,
during the cross-examination of two defense witnesses, the State asked about
the Pauline Cobb incident.  During cross-examination of defense witness
Reverend Willie Burton,[6] the
following took place:

[State]:  As it
relates to the revocation of his probation, you were in here for that being
prosecuted by Ms. Simpson.  Were you aware of the situation involving the
aggravated robbery of the elderly lady in Gregg County –

 

[Witness]:  No, sir,
I wasn’t.

 

[State]:  -- that he
pled true to?  

 

[Witness]:  Right, I
didn’t know about that.

 

[Defense Counsel]: 
Your Honor, I’m going to object to that.

 

[Emphasis
added.]  After a bench conference, during which one of the prosecutors said, “I
think we inadvertently published allegations,” the trial court sustained
Westmoreland’s objection, instructed the jury to disregard the State’s last
statement, and told the jury, “It is as if it did not happen.”

Outside
of the jury’s presence, the State acknowledged that there had been a
misunderstanding about whether Westmoreland pleaded true to the charge
involving Cobb, and the trial court stated, “[Y]our question was about the
robbery of an elderly lady.  There is no allegation of an elderly person in
this—that is specifically going into the facts, and you-all know that that’s
not allowed.”[7] Westmoreland’s
counsel moved for a mistrial, which the trial court denied.  The prosecutor
then asked Reverend Burton if he knew that Westmoreland was in a criminal
street gang, and Reverend Burton said no.

          Westmoreland
objected again when the prosecutor asked defense witness Cynthia Westmoreland, Westmoreland’s
mother,[8] the
following: 

[State]:  You know
that [Westmoreland] was arrested for an offense in Gregg County, Texas?

 

[Witness]:  Yes. 
They was [sic] doing stops, pulling people over for insurance.

 

[State]:  And the
offense was aggravated robbery

 

[Witness]:  That’s
what they say it is.

 

[State]:  And I’m not
alleging there was a weapon, but did you know who the victim was? 

 

[Defense counsel]: 
Your Honor, again, I object.

 

The
trial court sustained Westmoreland’s objection and instructed the jury to
disregard the last statement by the State.

When
Westmoreland moved for a mistrial, the trial court asked both sides’ attorneys
to approach the bench and then asked the State, “You have a reason to go into
this again?”  The prosecutor replied, “Absolutely. . . .  They are asking for
probation.  I am entitled to test her knowledge of his pending legal issues. 
He is still going to have to face these charges after he’s done here.”  The
trial court asked, “How would she know anything about it?” and the prosecutor
replied, “She’s his mother.”  The trial court said that it was hearsay and then
denied Westmoreland’s motion for mistrial.

C. 
Analysis

          Westmoreland
articulates his complaint thusly: 

The trial [c]ourt’s
instruction to the jury to disregard the erroneous evidence may well have been
sufficient to vitiate the harm in the first instance of error.  However, when
the State repeated its misconduct, requiring the trial [c]ourt to once again
instruct the jury, that instruction has less ameliorating effect.  To uphold
this misconduct by failing to reverse this case for a new trial on punishment
would encourage the State to repeat this form of conduct.  Here, the erroneous
evidence was not a slight claim of misbehavior on the part of [Westmoreland],
but a claim that he had robbed an elderly person to the extent of causing [her]
serious bodily injury.  While we may speculate that after [the] second
infraction by the State that the jury somehow overlooked this claim, it strains
reason to believe that was the case.

 

Westmoreland
cites Cliburn v. State, 661 S.W.2d 731, 732 (Tex. Crim. App. 1983), to
support his argument.[9]

          We
first observe that the complained-of allegations concerning the Pauline Cobb
incident were already before the jury and had been admitted without objection
prior to Reverend Burton’s or Cynthia’s testimonies, Westmoreland’s objections,
and Westmoreland’s motions for mistrial during their testimonies.  Specifically,
as previously recounted, during the punishment phase of trial, during the
reading of State’s Exhibits 140 and 141 into evidence, the prosecutor recited,
without objection: 

Allegations in both
[exhibits 140 and 141] for the petition to revoke his probation constitute the
offense here of murder and while in the course of committing theft of property
and with intent to obtain or maintain control of said property, the
defendant intentionally or knowingly caused serious bodily injury to Pauline
Cobb, an elderly woman over the age of 65 in Gregg County, Texas, on or about
the 20th day of March 2008.

 

[Emphasis
added.]  See Rico v. State, 707 S.W.2d 549, 553 n.1 (Tex. Crim. App.
1983) (distinguishing Cliburn based on appellant’s failure to object to
the admission of an unadjudicated extraneous offense contained in a motion to
revoke probation); Ytuarte v. State, No. 03-01-00168-CR, 2002 WL 820927,
at *2 (Tex. App.—Austin May 2, 2002, pet. ref’d) (not designated for
publication) (stating that although the State incorrectly presented documents
concerning the details of the offenses used to revoke appellant’s probation,
appellant did not object when the evidence was presented and therefore waived
error); see also Tex. R. App. P. 33.1.

          Further,
because the jury was already aware of the Pauline Cobb incident when the State
began cross-examining Reverend Burton and Cynthia, Westmoreland’s only possible
objections to the questions to these witnesses concerned whether Burton was
aware Westmoreland “pled true to” the allegations and whether Cynthia
was aware that Westmoreland was arrested for the offense.  And the
trial court sustained the objections to both questions and instructed the jury
to disregard each time.  See Russeau, 171 S.W.3d at 885 (“The asking of
an improper question will seldom call for a mistrial, because, in most cases,
any harm can be cured by an instruction to disregard.”).  Under the
circumstances, we cannot say that the questions Westmoreland complains of—particularly
the second question—were of “such a character as to suggest the impossibility
of withdrawing the impression produced on the minds of the jury,” as the underlying
basis for both objections was the State’s unobjected-to recitation that
Westmoreland had caused serious bodily injury to an elderly woman while robbing
her.  See Hernandez, 805 S.W.2d at 414; see also Rico, 707
S.W.2d at 553 n.1; Yuarte, 2002 WL 820927, at *2; Harris, 1990 WL
39468, at *2–3.  Therefore, we hold that the trial court did not abuse its
discretion by denying the motions for mistrial, and we overrule Westmoreland’s
single point.

IV. 
Conclusion

          Having
overruled Westmoreland’s single point, we affirm the trial court’s judgment.

PER CURIAM

 

PANEL: 
MCCOY, WALKER,
and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  July 7, 2011









[1]See Tex. R. App. P. 47.4.





[2]We have substituted
letters for the gangs’ actual names. 





[3]A minimum of three guns
were fired during the incident, and police found several spent nine-millimeter
and .380 casings at the crime scene.  The same nine-millimeter gun was
responsible for discharging many—but not all—of the nine-millimeter casings,
and five .380 caliber casings were fired from the same .380 caliber weapon. 
The deputy medical examiner testified that the gunshot that killed Dowell could
have been from either a nine-millimeter or a .380 caliber weapon.





[4]Arlington
Police Detective Tommy Lenoir testified that he conducted three interviews with
Demerson, who told him that Westmoreland was Dowell’s shooter.  All three
interviews were admitted in evidence and published to the jury. 

 





[5]Murder
is a first-degree felony.  See Tex. Penal Code Ann. § 19.02(c) (West
2011); see also id. § 71.02(a)(1), (c) (West 2011) (stating that a
person commits an offense if, with the intent to establish, maintain, or
participate in a combination or in the profits of a combination or as a member
of a criminal street gang, he commits or conspires to commit murder; the
punishment range is the same as for murder).  The punishment range for a
first-degree felony is from five to ninety-nine years or life and a fine of up
to $10,000.  See id. § 12.32 (West 2011).





[6]Reverend Burton testified during
his direct examination that he had known Westmoreland as a member of the youth
choir at his church in Amarillo, that Westmoreland had a solid upbringing, and
that Westmoreland would do well on community supervision based on his
upbringing.  During cross-examination, before reaching the Pauline Cobb incident,
the prosecutor asked the reverend if he was aware of Westmoreland’s involvement
in gang-related fights at a shopping mall around February 4, 2006, and at a
recreation center around November 11, 2006.  Reverend Burton said no to both.





[7]The admission of these
unproven allegations constituted proof of an extraneous offense on a non-final
conviction and would not have been admissible over a timely and specific
objection.  See, e.g., Harris v. State, No. 01-88-00991-CR, 1990 WL
39468, at *2–3 (Tex. App.—Houston [1st Dist.] Apr. 5, 1990, pet. ref’d) (not
designated for publication) (holding that appellant’s failure to object to the
admission of unproved burglary allegations submitted as the basis for
revocation of appellant’s probation waived any error).





[8]During her direct
examination, Cynthia testified that Westmoreland was a good son and that he had
“never been disrespectful to any elderly person that [she] know[s].”  During
cross-examination, Cynthia stated that prior to the shooting, she had never
heard of her son’s involvement in Gang B, that she knew he had never been a
gang member and had not been involved in Gang B, that Westmoreland had not been
involved in a gang-related fight at a shopping mall on February 4, 2006, and
that he was not involved in a gang-related fight at a recreation center on
November 11, 2006.  She denied being aware that Westmoreland had pleaded guilty
to the misdemeanor criminal trespass charge, but she knew that he had pleaded
guilty to the possession of marihuana charge.





[9]In Cliburn, the
court stated that the State was entitled to show that probation had been
revoked but not the details of the offense upon which the revocation was
based.  661 S.W.2d at 732.