

Harold J. Laine, Jr., Port Arthur, court appointed, Walter M. Sekaly, Beaumont, court appointed, for appellant.

Tom Hanna, Dist. Atty., and John R. DeWitt, Asst. Dist. Atty., Beaumont, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

**Earl James LOVILOTTE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 52786.**

Court of Criminal Appeals of Texas.

May 3, 1977.

OPINION

DOUGLAS, Judge.

Lovilotte appeals from a conviction for the delivery of heroin. The jury assessed his punishment at twenty-five years. His only contention is that reversible error was committed when the prosecutor asked a reputation witness a "did you know" instead of a "have you heard" question which could not be cured by an instruction by the judge to disregard it. We overrule that contention and affirm.

Officer Joseph Payne of the Calcasieu Parish Sheriff's Department in Louisiana testified that he and Deputies Duhon and Herbert drove from Lake Charles to Port Arthur on October 9, 1974, to meet with Lt. Jerry Fontenot of the Port Arthur Police

Department at Rose Hill Park. Officers from Calcasieu Parish and Jefferson County had been working together on drug cases in the area.

Upon their arrival at Rose Hill Park, Officers Fontenot, Herbert and Duhon searched him and his vehicle as was customary before an attempt to make a case through the use of an undercover agent. He had no money or narcotics. After the search was completed Fontenot gave him four twenty dollar bills, one ten dollar bill and two five dollar bills. Before Payne proceeded to Earl's Garage, Duhon hid in the trunk of an automobile. Payne drove it to the garage, parked, waited a minute and got out of the car. Moments later he was approached by appellant whom he knew as "RoRo" because of his previous work in that area of Port Author. After a short conversation, appellant asked Payne if he wanted some "stuff", which was street talk for dope, and Payne responded that he did. Appellant told him he had some "twenty-five cent papers" (twenty-five dollars worth of heroin). Payne said he needed two; appellant said he had three left. Payne did not want three. Appellant said it would take him about ten minutes to get it there and went into the service station next door to his garage.

Payne sat on the trunk of the car and sang while he waited for some thirty minutes. Appellant then came out of the service station and talked to two other individuals. Roosevelt Scott drove up and went inside the station with appellant. Payne recognized Scott because he had purchased narcotics from him on previous occasions. While appellant and Scott were talking, Payne got back in his car and carried on a conversation with Duhon. Scott and appellant talked a couple of minutes before appellant walked back to Payne's car and handed him two sealed plastic packages. Payne, in turn, gave appellant two twenty dollar bills and two five dollar bills. Payne put the two packages in his left shirt pocket. Appellant told Payne that if he needed any more "stuff" just let him know. Payne drove off and returned to Rose Hill Park where he was met by Fontenot and Herbert. He gave Fontenot the two plastic packets, the remaining two twenty dollar bills and the one ten dollar bill.

Duhon testified that he got in the trunk for surveillance purposes and to protect Payne. The trunk was equipped so that he could open and close it from the inside. Duhon stated that he overheard the initial conversation between Payne and appellant and testified substantially the same as Payne did. Following the initial conversation he felt someone, who he later determined was Payne because of his voice, sit on the trunk and that Payne stayed there for about thirty minutes. Payne then got back into the car through the passenger side and they conversed for a minute or two. Shortly afterward, he heard the same voice that he had heard earlier when Payne agreed to make the purchase. The man walked up to the passenger's side of the car and told Payne that it was "good stuff." He then heard Payne count out the money and pay him. Payne and Duhon then returned to the park. Immediately after getting out of the trunk Duhon watched Payne give Fontenot the two papers of heroin he had taken from his shirt pocket.

Herbert testified that following their initial meeting at the park he and Fontenot drove within two hundred feet of Earl's Garage and watched while Payne was parked there. Herbert related the same sequence of events as did Payne concerning the arrival and what went on at the garage for some thirty minutes. Herbert assisted Duhon out of the trunk and then watched Payne give Fontenot the two packets from his shirt pocket. All of the officers inspected the packets before Payne placed them in a sealed evidence envelope.

Lt. Fontenot testified to the same facts as the other officers did regarding their initial meeting at the park. He then searched Payne and his car and gave him one hundred dollars. His testimony was in substance the same as that of Herbert about the surveillance at the garage and later getting the heroin and the balance of the money from Payne.

Appellant denied ever seeing, meeting, or talking to Payne or anyone fitting his description on the day in question. On cross-examination he said he "knew of" Roosevelt and Will Scott but saw neither of them or Will Scott's car on that date. He stated that he knew Will Scott's car because Scott was a customer of his. Then he admitted that he had heard of drug dealing in the area of his garage but knew nothing of it because he just did not pay any attention to the talk. Appellant admitted to having been convicted for possession of a dangerous drug as well as shoplifting in 1973.

Appellant's reputation as a peaceful and law-abiding citizen was made an issue at the guilt stage of the trial. Then proper "have you heard" questions were asked of Walter Moore, Sr., relative to appellant having been arrested or convicted on different occasions. Then the following complained of question was asked:

"Q. (Prosecutor) If you had known about these incidents I have asked about, or if you had heard about them, would you still be of the opinion that the defendant has a good reputation?"

The following occurred:

"MR. SEKALY: (Defense Counsel) Your Honor, we object to that question as now definitely being a direct assertion on the part of the State that these events occurred even though this witness has not heard of them.

"MR. DOYLE: (Prosecutor) I withdraw the question, Your Honor.

"THE COURT: The question was asked, it was withdrawn, it was improper, so do not consider it for any purpose."

A motion for mistrial was overruled.

If the rule in *Parasco v. State,* 168 Tex. Cr.R. 89, 323 S.W.2d 257 (1959), still applied, appellant would be correct. There the Court held:

"Whenever a question is asked which amounts to an assertion of fact and implies the commission of another offense, its harmfulness cannot be cured by the answer or failure to answer, or by any instruction which the court may give, and reversible error is reflected thereby."

This statement was quoted with approval in *Webber v. State,* 472 S.W.2d 136 (Tex.Cr. App.1971). However, that broad language was expressly overruled in *Carey v. State,* 537 S.W.2d 757 (Tex.Cr.App.1976). In *Carey* we held that the asking of such a question could be cured by an instruction to the jury to disregard the question, citing *Clark v. State,* 500 S.W.2d 469 (Tex.Cr.App.1973); *Ortiz v. State,* 490 S.W.2d 594 (Tex.Cr.App. 1973); *Longoria v. State,* 507 S.W.2d 753 (Tex.Cr.App.1974), and *White v. State,* 444 S.W.2d 921 (Tex.Cr.App.1969), as examples of prior cases wherein the harmfulness of asking an improper question was cured by an instruction. In *Carey* we quoted from *White:*

" 'An error in asking an improper question or in admitting improper testimony may be generally cured or rendered harmless by a withdrawal of such testimony and an instruction to disregard the same except in extreme cases where it appears that the question or evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds.' "

The complained of question should not have been asked, but the error does not call for a reversal. Appellant admitted that he had been convicted twice. These covered two of the have you heard questions propounded to Moore. In view of the evidence of appellant's guilt and his admission of two prior convictions, and the court's instruction not to consider the improper question, no reversible error is shown.

The judgment is affirmed.

ROBERTS, Judge, concurring.

I agree with the majority's conclusion that it was error to ask Walter Moore, Sr., the "did you know—have you heard" reputation question; I also agree that the error was not reversible.

However, I reach this result by a different route than that of the majority. The

majority holds in effect that such a question is generally *not* reversible error, but may be such in rare cases. In fact, the rule is to the contrary.

In *Smith v. State*, 513 S.W.2d 823 (Tex. Cr.App.1974), we discussed "have you heard" questions and unanimously stated that:

"Indeed, the mere asking of an improperly framed question asserting as a matter of fact that the defendant committed a specific act of misconduct is reversible error." *Id.*, at 828, *citing, Webber v. State*, 472 S.W.2d 136 (Tex.Cr.App.1971).

The more reasonable view concerning improperly framed "have you heard" questions is that of *Wharton v. State*, 157 Tex. Cr.R. 326, 248 S.W.2d 739 (1952):

"Some may be harmless and some may be made harmless by a negative answer, but *whenever the question is so stated that it amounts to an assertion of a fact* under the conditions here under discussion *and it implies the commission of another offense*, it may be said that its harmfulness cannot be cured by the answer and seldom by any instruction which the court is able to give the jury." (Emphasis included) *Wharton, supra*, at 740, *quoting, McNaulty v. State*, 138 Tex.Cr.R. 317, 135 S.W.2d 987, 988–989.

In *Carey v. State*, 537 S.W.2d 757, 759 (Tex.Cr.App.1976) I concurred in the overruling of the following language from *Parasco v. State*, 168 Tex.Cr.R. 89, 323 S.W.2d 257, 259 (1959):

"Whenever a question is asked which amounts to an assertion of fact and implies the commission of another offense, its harmfulness cannot be cured by the answer or failure to answer, or by any instruction which the court may give, and reversible error is reflected thereby."

I felt that such language was too broad and that in *Parasco* the instruction was sufficient to cure the improper question. *Carey* involved one of the "seldom" instances, see *Wharton, supra*, where an instruction cured the error of the mere asking of an improper question which implied the commission of another offense. I adhered

to the rule of *Wharton, supra*, and *McNaulty, supra*, in *Carey* and I still adhere to it.

I would hold that the question asked of the witness here was one of those "exceptional cases [in which] an instruction to disregard can cure the error." *Carey, supra*, 537 S.W.2d at 759 (concurring opinion).

ODOM, J., joins in this concurrence.