Rufino Rodriguez
GONZALES, Appellant,

v.

The STATE of Texas, Appellee.

No. 310–84.

Court of Criminal Appeals of Texas.

Jan. 23, 1985.

Gary L. Kilgore, Austin, for appellant.

Jeffrey L. Van Horn, Dist. Atty., Todd A. Blomerth, Asst. Dist. Atty., Lockhart, Robert Huttash, State's Atty., and Alfred Walker, First Asst. State's Atty., Austin, for the State.

OPINION ON STATE'S PETITION FOR
DISCRETIONARY REVIEW

ONION, Presiding Judge.

This is an appeal from a conviction for delivery of marihuana of more than one-fourth ounce. Punishment, enhanced by one prior felony conviction alleged and

proved, was assessed by the jury at 11 years in the Department of Corrections.

Appellant perfected an appeal to the Austin Court of Appeals. The cause was transferred to the Beaumont Court of Appeals by order of the Supreme Court of Texas.

The Beaumont Court of Appeals sustained appellant's first ground of error holding the trial court erred in overruling his motion for mistrial based on the prosecution's introduction of an arrest of the appellant which did not result in a final conviction. The conviction was reversed. *Gonzales v. State* (Tex.App. No. 09–83–109 CR—Beaumont 1984).

The State in its petition for discretionary review urged that the error, if any, was not reversible error because the court sustained the objection to the question, the question was not answered, and the jury was instructed to disregard the question. We granted the State's petition to determine the correctness of the decision of the Court of Appeals.

Appellant's first ground of error states: "The Trial Court erred in denying Appellant's Motion for Mistrial as a result of the prosecution's *introduction* of arrests of the appellant which did not result in final conviction." (Emphasis supplied.)

The mistrial motion was made at the penalty stage of the trial. At the commencement of that phase of the trial the State waived and abandoned the prior marihuana possession conviction in Guadalupe County alleged in the second paragraph of the indictment for the enhancement of punishment and proceeded on the third paragraph of the indictment alleging a prior 1977 marihuana possession conviction in Gonzales County for enhancement of punishment. Immediately thereafter the parties stipulated appellant was the same person convicted in the Gonzales County case and also the same person convicted in the Guadalupe County case. The pen packets from said convictions were introduced without objection to support the third paragraph of the indictment and to prove appel-

lant's "prior criminal record" under Article 37.07, V.A.C.C.P.

Subsequently appellant called his wife as a witness. She testified as to her 12-year marriage, the three children, that appellant was a good father, a good provider, etc., but acknowledged he had been to the penitentiary for marihuana possession. On cross-examination Mrs. Gonzales was asked about appellant's convictions in Guadalupe and Gonzales Counties. She wasn't sure, guessed that whatever was on "the paper" was correct.

On re-direct appellant's counsel inquired:

"Q. Mrs. Gonzales, during the 12 years you've been married, *has Rufino been*, to your knowledge, *ever charged with anything* other than the case that we've tried today, with just those two possessions of marijuana with—I'm sorry. *Let me rephrase it. Has he ever been convicted of anything* other than those two possessions of marijuana?

"A. That's all I know about." (Emphasis supplied.)

On re-cross-examination the prosecutor asked if she hadn't testified on direct examination she was only aware of the prior offense for which appellant went to the penitentiary and "this one" as the only offenses with which he had been charged. Upon objection "That wasn't the answer to my specific question," the prosecutor agreed to rephrase the question. The record then reflects:

"Q. Isn't it a fact that he was charged on the 4th day of March of 1978 with delivering to Ronald Green a quantity of marijuana of over one fourth of an ounce?

"A. That he was what, convicted?"

The jury was then removed at appellant's request. His counsel stated that he had rephrased his question on re-direct, and asked about convictions, not charges. He objected to the State's question as interjecting an extraneous offense for which there was no conviction. The prosecutor responded he felt sure appellant's counsel had asked about charges. The court reporter read his notes as to the question

asked on re-direct examination. The prosecutor complained about the manner in which the question had been asked on re-direct, but re-withdrew his question on re-cross which had not been answered.[1] The appellant asked for a "limiting instruction" and moved for a mistrial. The court agreed to give the "limiting instruction," but denied the mistrial motion. When the jury returned, the court instructed the jurors to disregard the last question of the prosecutor and the answer, if any, and not to consider them for any purpose. Mrs. Gonzales was not interrogated further.

It is here observed that at no time did appellant call the court's attention to the order granting his motion in limine, and object to the question on the basis of a violation thereof, nor did he use it as the basis for his motion for a mistrial.

The question which presents itself is whether the attempt here by the State to introduce evidence of a "charge" without a showing of a final conviction could be cured by the court's instruction to the jury to disregard. The State concedes the question was improper, but calls attention to the circumstances under which it was asked and withdrawn without being answered.

In *White v. State*, 444 S.W.2d 921 (Tex. Cr.App.1969), this Court wrote:

"An error in asking an improper question or in admitting improper testimony may be generally cured or rendered harmless by a withdrawal of such testimony and an instruction to disregard the same except in extreme cases where it appears that the question or evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds.

*Wheeler v. State*, Tex.Cr.App., 413 S.W.2d 705, 707; 5 Tex.Jur.2d, Sec. 437; McCormick and Ray, Texas Law of Evidence, Vol. 1, Sec. 29."

See also *Carey v. State*, 537 S.W.2d 757, 759 (Tex.Cr.App.1976); *Lovilotte v. State*, 550 S.W.2d 75 (Tex.Cr.App.1977); *Maxwell v. State*, 595 S.W.2d 126 (Tex.Cr.App.1980); *Yarbrough v. State*, 617 S.W.2d 221 (Tex. Cr.App.1981); *Lopez v. State*, 630 S.W.2d 936 (Tex.Cr.App.1982).[2]

In determining whether a jury instruction is sufficient to cure the error, the facts of each particular case must be noted. See *Moffett v. State*, 555 S.W.2d 437 (Tex. Cr.App.1977). As earlier observed, the improper question was never answered, the question was withdrawn and the jury was instructed to disregard. Did the mere asking of the question constitute reversible error? Courts rarely reverse a conviction of a crime solely because an improper question was asked. To cause a reversal the question must be obviously harmful to the defendant. *Pearce v. State*, 513 S.W.2d 539, 543 (Tex.Cr.App.1974). The question was asked at the penalty stage of the trial under the circumstances described. The jury had already found the appellant guilty of the offense charged and the evidence was stipulated he had been twice previously convicted of two similar felonies. If the unanswered question itself was harmful, it had to be harmful on the issue of punishment. The maximum punishment for the offense charged with one prior felony conviction for enhancement of punishment would have been 20 years' imprisonment and a possible fine of $10,000.00. The punishment assessed by the jury, however, was 11 years' imprisonment for his third-degree offense of the same nature. We cannot conclude that, given the circum-

---

1. It appears that the prosecutor thought appellant had "opened the door" by his question on re-direct examination entitling the State to ask the question it did. See *Orozco v. State*, 164 Tex.Cr.R. 630, 301 S.W.2d 634 (1957); *Heartfield v. State*, 470 S.W.2d 895 (Tex.Cr.App.1971).

2. See also *Waller v. State*, 581 S.W.2d 483 (Tex. Cr.App.1979); *Seaton v. State*, 564 S.W.2d 721 (Tex.Cr.App.1978); *Granviel v. State*, 552 S.W.2d

107 (Tex.Cr.App.1976), cert. den. 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250; *Sheppard v. State*, 545 S.W.2d 816 (Tex.Cr.App.1977); *Kirkpatrick v. State*, 515 S.W.2d 289 (Tex.Cr.App.1974); *Pearce v. State*, 513 S.W.2d 539 (Tex.Cr.App. 1974); *Guerrero v. State*, 507 S.W.2d 765 (Tex. Cr.App.1974); *Ortiz v. State*, 490 S.W.2d 594 (Tex.Cr.App.1973).

stances, the question was of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors by an instruction to disregard. The trial court did not err in overruling the motion for mistrial.

In reversing, the Court of Appeals recognized the rule stated in *White*, but felt the violation of the order granting the motion in limine called for a different result. The court said:

"We recognize the rule directed in these cases, as indeed we must; nevertheless, here we have a situation where the judge before the trial directed that such a question not be asked before a ruling from the bench, a ruling which the State agreed to. If such rulings are to be considered 'harmless' when violated as long as the judge properly instructs the jury, why should an appellant even request one? Our answer is that the same in this case was harmful, and we, therefore, sustain this ground of error and reverse and remand this case."

No authority is cited for this holding.

The appellant filed a pre-trial motion in limine requesting, inter alia, that the State be restrained from mentioning his prior arrests which had not resulted in a conviction with which he could be impeached if he testified.

Prior to voir dire examination appellant orally asked that the State not be allowed to go into certain "matters" noted in his motion in limine until there was a bench conference to determine their admissibility because the "matters" were so prejudicial. The State had no objection if the only requirement was a bench conference and a ruling before it offered the evidence. The court granted the motion in limine with that understanding.

At the time of the complained of question the appellant did not object on the basis of a violation of the order granting the motion in limine nor was this the basis for his mistrial motion. It would not appear appel-

lant preserved any error on this basis for appeal. In fact, appellant's stated ground of error concerning the overruling of his motion for mistrial does not mention the ruling on the motion in limine.

■ What the Court of Appeals overlooked is that this Court has declared many times that the granting of a motion in limine will not preserve error. For error to be preserved with regard to the subject matter of the motion in limine it is absolutely necessary that an objection be made at the time when the subject is raised during the trial. *Thomas v. State*, 477 S.W.2d 881 (Tex.Cr.App.1972), and cases there cited; *Brazzell v. State*, 481 S.W.2d 130 (Tex. Cr.App.1972); *Simpson v. State*, 507 S.W.2d 530 (Tex.Cr.App.1974); *Whatley v. State*, 488 S.W.2d 422 (Tex.Cr.App.1973); *Harrington v. State*, 547 S.W.2d 616 (Tex. Cr.App.1977); *Sheppard v. State*, 545 S.W.2d 816 (Tex.Cr.App.1977); *Armitage v. State*, 637 S.W.2d 936, 938 (Tex.Cr.App. 1982).

In *Brazzell v. State*, supra, this Court wrote:

"The appellant is here attempting to rely upon a motion in limine to preserve error to the admission of testimony which he contends was not admissible. Generally, a motion in limine will not preserve error to the admission of inadmissible evidence. The violation of a motion in limine [3] may entitle a party to relief, but any remedies available with regard to such a violation are with the trial court. If its order has been violated, the trial court may apply the sanctions of contempt or take other appropriate action. But for error to be preserved on appeal with regard to the admission of inadmissible evidence objection thereto should be made at the time the evidence is offered."

In *Romo v. State*, 577 S.W.2d 251 (Tex. Cr.App.1979), it was written:

---

**3.** *Brazzell* and other cases must be read with understanding that the Court is talking about violation of an order granting a motion in li-

mine, not the violation of the motion which may never have been acted upon.

"However, reliance on a motion in limine will not preserve error. A defendant must object on the proper grounds when the evidence is offered at trial. *Harrington v. State,* 547 S.W.2d 616 (Tex.Cr.App.1977); *Lopez v. State,* 535 S.W.2d 643 (Tex.Cr.App.1976). The reason for this rule is that a judge is often not in a position to decide on the admissibility of evidence prior to the beginning of trial. * * * Counsel could ask in the motion in limine that before a suspect area is entered into at trial, the opposing counsel be required to approach the bench and inform the court so that the jury may be excluded. By that procedure the evidence may be challenged at the proper time without risk of prejudicing the jury. Whatever the procedure chosen, defense counsel must object before the evidence is admitted during trial in order to properly call the court's attention to the matter and preserve the error for appeal."

█ In the instant case appellant did object at trial and did not rely on the granting of the motion in limine. The unanswered question was withdrawn, the jury was instructed to disregard, but the mistrial motion was denied. While recognizing the correct rule to be applied, the Court of Appeals never reached the issue of whether the harm, if any, which resulted from the mere asking of the question could have been cured by the jury instruction. Instead, it held that when the prosecutor violated the order granting the motion in limine harm resulted as a matter of law. In effect it held that "all the king's horses and all the king's men could not make things right again."[4] In this the Court of Appeals fell into error.

The judgment of the Court of Appeals is reversed and the cause is remanded to that court for determination of appellant's other grounds of error.

CLINTON, J., concurs.

**4.** Quoted from page 4 of the State's Petition for Discretionary Review filed by the State's Prose-

TEAGUE, Judge, dissenting.

The issue that is before this Court is not whether one of the prosecuting attorneys in this cause committed error by asking an improper question; the issue, instead, is whether the error became harmless by the trial court's instruction to the jury. Try as I might, I am unable to conclude that there is not a reasonable possibility that the error in asking the improper question did not contribute to the punishment that was assessed. I, therefore, respectfully dissent.

Appellant's punishment, enhanced by one prior felony conviction, was assessed by the jury at 11 years' confinement in the Department of Corrections. The range of punishment, as to the possible time in the penitentiary that could have been assessed, was not less than 2 years nor more than 20 years.

The record reflects that a punishment hearing was conducted after the jury found appellant guilty of delivering to another person more than one-fourth of an ounce of marihuana. The State proved up at the punishment hearing two prior felony convictions. However, only one of the convictions was used to enhance appellant's punishment. During the punishment hearing, Mr. Kilgore, the attorney for appellant, asked the appellant's wife the following question: "Q: Mrs. Gonzales, during the 12 years you've been married, has Rufino been, to your knowledge, ever charged with anything other than the case that we've tried today, with just those two possessions of marijuana [sic] with—I'm sorry. Let me rephrase it. Has he ever been convicted of anything other than those two possessions of marijuana [sic]." The witness answered: "That's all I know about."

Thereafter, on cross-examination, Mr. Blomerth, one of the prosecuting attorneys, asked the witness the following question, and she responded with the following answer: "Q: Isn't it a fact that he was charged on the 4th day of March of 1978

cuting Attorney.

with delivering to Ronald Green a quantity of marijuana [sic] of over one fourth of an ounce? A: That he was what, convicted?"

Mr. Kilgore then objected and a hearing outside the presence of the jury was conducted on Mr. Kilgore's motion for mistrial.

The record of the hearing reveals that not all agreed upon the wording of the question. Mr. Kilgore stated: "In my present frame of mind, I had a slight slip of tongue", "That word, (charged), may have come out of my mouth, but I immediately corrected it ..." However, Mr. Van Horn, the other prosecuting attorney, stated to the court that he thought that the question was simply, "Are you aware of him ever being charged?" The court reporter then ascertained that the question was as we have set it out above, which does show what might perhaps be considered "a slip of the tongue." Mr. Van Horn then stated, "I thought I specifically heard the—maybe I didn't hear him rephrase it or maybe there was more. I'm not sure, Your Honor, but I certainly thought there was a question asked relating to charges and not convictions ..." Thereafter, Mr. Blomerth responded: "The defense attorney is attempting in this case—he asked a question that both Mr. Van Horn and I clearly heard as being, has he ever been charged with such an offense, not convicted, and in the middle of his own sentence rephrases it in such a manner that perhaps he did confuse us ... If the record reflects what has been said here, we will withdraw the question. I specifically—and I think Mr. Van Horn [sic] asked this question in good faith and we would withdraw the question at this time."

The trial judge instructed the jury that they were not to consider the question or the answer, "for any purpose." Mr. Blomerth also stated the following in the presence of the jury: "The State withdraws the question, Your Honor, as well and passes the witness ..." The witness was not asked any further questions. Mr. Kilgore's motion for mistrial was denied.

It has long been the established rule in this State that, excepting capital murder cases, the defendant is to be tried and punished upon the merits of each case, and that proof of extraneous crimes or specific acts of misconduct by the defendant are generally not admissible evidence, such becoming admissible evidence under the most limited of exceptions and conditions. Viewing the matter from hindsight, there is no question but that Mr. Blomerth erred in asking the appellant's wife the following question, "Isn't it a fact that he, (the appellant), was charged on the 4th day of March of 1978 with delivering to Ronald Green a quantity of marijuana of over one fourth of an ounce?"

However, the issue is not whether Mr. Blomerth erred, because even the State concedes that his question was improper; the issue, instead, is whether there is a reasonable possibility that the error contributed to the jury's decision to assess appellant 11 years' confinement in the penitentiary. In light of this Court's decision of *Mounts v. State*, 148 Tex.Cr.R. 149, 185 S.W.2d 731 (1945), which held that reversible error may occur solely because of an improper question, and the cases which have followed *Mounts*, supra, it would be quite easy to hold that the improper question was incurable. However, did the fact that the jury was made aware that appellant had been previously convicted of two prior felony offenses, and had served time in the penitentiary, and the trial court instructed the jury to disregard the question and answer, cure or cause the error to become harmless? Or, was the question so prejudicial and obviously hurtful as to preclude appellant a fair and impartial punishment hearing, which the law guaranteed him? The jury was permitted to assess punishment within the range of 2 to 20 years. They chose to assess punishment at 11 years' confinement in the penitentiary. Is there a reasonable possibility that the improper question might have contributed to the jury's decision to assess punishment at 11 years' confinement in the penitentiary? Not without some difficulty, I am constrained to find that the error was incurable.

In *Mounts,* supra, the defendant was tried for murder. During cross-examination, the prosecuting attorney asked the defendant the following question, "On December 24, 1983, at Live Oak Cliff Boulevard at 9:15, I will ask you if you didn't have an altercation and pistol-whip a victim?" Even though the trial judge intervened before an objection was made, stating, "Here. Here. Stop that. That's improper," this Court, nevertheless, held that the question, alone, constituted incurable error. "The question, as so framed, of and within itself, implied appellant's guilt of the misconduct inquired about and amounted, therefore, to proof of a fact, by necessary implication damaging and hurtful to appellant, that the State was not authorized to prove." (734). This Court also held, regarding the statements of the trial judge, "he did what he could but the harm to the appellant had been done." (735).

In this instance, at a trial which occurred in 1981, appellant's wife was asked, "Isn't it a fact that he was charged on the 4th day of March of 1978 with delivering to Ronald Green a quantity of marijuana of over one fourth of an ounce?" I believe that the average juror would have believed that this implied appellant's guilt of the misconduct inquired about and amounted, therefore, to proof of a fact, by necessary implication damaging and hurtful to appellant. Under the facts and circumstances of this case, I am unable to state that, as to the punishment that was assessed, "all the king's horses and all the king's men can unring the bell, can forget the wound that was inflicted, or can forget the smell." See *Dunn v. United States,* 307 F.2d 883, 886 (5th Cir.1962).

We, as judges on the highest appellate criminal court of this State, whose decisions are subject to review only by the Supreme Court of the United States, are, of course, concerned with guilt, innocence, and punishment in criminal cases; but of equal importance is the fact that we are commissioned by the citizens of Texas to make sure that persons who are accused of committing criminal wrongs against the State have received their constitutionally guaranteed right to a fair trial, which, of course, includes guilt as well as punishment.

Although I would be one of the first to agree that trials are rarely, if ever, perfect, I must state in this instance that I am unable to say that the error was curable and that there is not a reasonable possibility that such error might have affected the jury's decision to assess appellant's punishment at 11 years' confinement in the penitentiary. Therefore, I am constrained to dissent.

MILLER, J., joins.