

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-067-CR

BRANDON L. MOORE                                                    APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

------------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

A jury convicted Appellant Brandon L. Moore of engaging in organized criminal activity and murder. The trial court assessed his punishment on each count at fifty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice, to be served concurrently. Appellant brings two points on appeal, arguing that the trial court erred by failing to suppress his

---

[1] *See* Tex. R. App. P. 47.4.

statement and by refusing to declare a mistrial based on the introduction of testimony that Appellant had been to prison. Because we hold that the trial court did not err, we affirm the trial court's judgment.

**Background Facts**

Appellant and Lonnie Harris III were engaged in a continuing dispute, involving insults and Appellant's pulling a gun on Lonnie. One day Lonnie ran into Appellant, insults were exchanged, and Lonnie ran away. Appellant ran after him, carrying a firearm. As he ran, Lonnie saw a thirteen-year-old boy named Sammie sitting on the steps. Lonnie told Sammie to get out of the way because there was someone coming behind him with a gun. Sammie got up and went through a hole in the fence. Then Lonnie heard a gunshot from behind him and saw Sammie fall. Lonnie did not stop running until he got home. Sammie had been hit by the bullet, and he died of single gunshot wound to his left forehead.

The night of the shooting, Appellant called his girlfriend, Crystal Sealy, and told her that people were saying that he had shot a boy. When Crystal visited Appellant in jail, he told her that he did not mean to kill the boy.

The police investigated Sammie's murder and developed a suspect, Appellant. While they were preparing an arrest warrant, the gang officers went with Detective Matthew Hardy to the location where they believed that they

2

could find Appellant. They contacted Appellant, thought there might be a local traffic warrant for unpaid traffic violations, detained him, handcuffed him, and put him in the back of a police unit. Meanwhile, Appellant's girlfriend signed a consent to search their apartment. The police did not discover any evidence as the result of that search.

Officer Charles Brady testified that he participated in detaining Appellant and taking his statement. Officer Brady testified that there were three police vehicles and five officers present at the scene and that officers had first located Appellant when they saw him get into a vehicle, which they then stopped. The officers drew their guns and ordered Appellant from the vehicle. Appellant was ordered to the ground, handcuffed, and put into the back of a police car for about an hour. The police officers were unable to confirm an outstanding warrant, however.

The evidence is conflicting regarding the taking of Appellant's statement. Detective Hardy testified that Appellant "was asked if he would like to speak to detectives about this offense and he voluntarily agreed to go with the officers." Brady testified that the officers removed the handcuffs before they invited Appellant to the police station and speculated that Appellant probably would not have been handcuffed during transport.

3

Appellant testified that after he was handcuffed and place in the back of the police car, the officers told him he had a murder warrant. He testified that the officers transported him to the police department in handcuffs, and he denied that he was ever asked if he voluntarily wanted to give a statement. Instead, he testified that he told the police that he wanted to leave. He testified that a detective told him that if he would not help the police by giving a statement, the detective would not help Appellant, and Appellant would go to jail. After he gave the statement, Appellant was allowed to leave the police department.

**Motion to Suppress**

In his first point, Appellant contends that the trial court erred by failing to suppress his statement that was obtained as a result of an illegal arrest. We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.[2] In reviewing the trial court's decision, we do not engage in our own factual review.[3] The trial judge is the sole trier of fact and judge of

---

[2] *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

[3] *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).

4

the credibility of the witnesses and the weight to be given their testimony.[4]

Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.[5] But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo.[6]

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling.[7] When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial

---

[4] *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006).

[5] *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

[6] *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

[7] *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

court's ruling, supports those fact findings.[8] We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling.[9]

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling.[10]

The trial court apparently believed the testimony of the police officers. The trial court entered findings of fact and conclusions of law in which the trial court expressed his finding that the police officers' version of the taking of Appellant's statement was true. Taking as true the police's assertion that Appellant voluntarily went to the police department, the unrecorded statement that he provided was not the product of custodial interrogation and was voluntarily given; that is, because he was not under arrest at the time he gave the statement, and because any taint from the illegal detention was attenuated by his voluntarily accompanying the police to the police station, as the trial court found, the statement was not the product of an illegal detention, and

---

[8] *Kelly*, 204 S.W.3d at 818–19.

[9] *Id*. at 819.

[10] *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

therefore the trial court was not required to suppress the statement.[11]  We

overrule Appellant's first point.

**Failure to Declare a Mistrial After Evidence Appellant Had Been to Prison**

In his second point, Appellant contends that the trial court erred by

denying his motion for mistrial after the jury heard testimony during the guilt

phase that he had been in prison. To preserve a complaint for our review, a

party must have presented to the trial court a timely request, objection, or

motion that states the specific grounds for the desired ruling if they are not

apparent from the context of the request, objection, or motion.[12]  The granting

of a motion in limine does not preserve error in the admission of evidence.  The

party must object when the evidence is offered at trial.[13]  Further, the trial court

must have ruled on the request, objection, or motion, either expressly or

---

[11] *Bell v. State*, 724 S.W.2d 780, 787 (Tex. Crim. App. 1986), *cert. denied*, 479 U.S. 1046 (1987); *Brown v. Illinois*, 422 U.S. 590, 604, 605, 95 S. Ct. 2254, 2262 (1975).

[12] Tex. R. App. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070 (1999).

[13] *Wilkerson v. State*, 881 S.W.2d 321, 326 (Tex. Crim. App.), *cert. denied*, 513 U.S. 1060 (1994); *Gonzales v. State*, 685 S.W.2d 47, 50 (Tex. Crim. App.), *cert. denied*, 472 U.S. 1009 (1985).

implicitly, or the complaining party must have objected to the trial court's refusal to rule.[14]

Appellant complains of Crystal Sealy's testimony that Appellant had told her one of his tattoos meant that he would die before he went back to prison. Appellant did not object to the testimony. Crystal then discussed the tattoos on Appellant's right hand, his left hand, his upper back, and across his shoulder blades, some of which indicated gang affiliation. Appellant still did not object. It was not until Crystal testified about getting into a physical altercation with Appellant on the day Sammie was killed that defense counsel finally objected and asked to approach the bench. Counsel then asked for a mistrial because the witness was "getting into some other bad acts." There was a discussion about admonishing the witness not to discuss extraneous bad acts. Only after that discussion did counsel object to Crystal's earlier testimony about Appellant's having been in prison as a violation of the rulings on motions in limine.

Because Appellant did not timely object to the statement about prison, he has not preserved his complaint for review. We overrule Appellant's second point.

---

[14] Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).

8

**Conclusion**

Having overruled both of Appellant's points, we affirm the trial court's judgment.

                                              LEE ANN DAUPHINOT
                                              JUSTICE

PANEL:  DAUPHINOT, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  June 18, 2009