COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-067-CR

 

 

BRANDON L. MOORE                                                           APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM THE 396TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








A jury convicted Appellant Brandon L. Moore of
engaging in organized criminal activity and murder.  The trial court assessed his punishment on
each count at fifty-five years=
confinement in the Institutional Division of the Texas Department of Criminal
Justice, to be served concurrently. 
Appellant brings two points on appeal, arguing that the trial court
erred by failing to suppress his statement and by refusing to declare a mistrial
based on the introduction of testimony that Appellant had been to prison.  Because we hold that the trial court did not
err, we affirm the trial court=s
judgment.

                                        Background
Facts

Appellant and Lonnie Harris III were engaged in a
continuing dispute, involving insults and Appellant=s
pulling a gun on Lonnie.  One day Lonnie
ran into Appellant, insults were exchanged, and Lonnie ran away.  Appellant ran after him, carrying a
firearm.  As he ran, Lonnie saw a
thirteen-year-old boy named Sammie sitting on the steps.  Lonnie told Sammie to get out of the way
because there was someone coming behind him with a gun.  Sammie got up and went through a hole in the
fence.  Then Lonnie heard a gunshot from
behind him and saw Sammie fall.  Lonnie
did not stop running until he got home. 
Sammie had been hit by the bullet, and he died of single gunshot wound
to his left forehead.

The night of the shooting, Appellant called his
girlfriend, Crystal Sealy, and told her that people were saying that he had
shot a boy.  When Crystal visited
Appellant in jail, he told her that he did not mean to kill the boy.








The police investigated Sammie=s murder
and developed a suspect, Appellant. 
While they were preparing an arrest warrant, the gang officers went with
Detective Matthew Hardy to the location where they believed that they could
find Appellant.  They contacted
Appellant, thought there might be a local traffic warrant for unpaid traffic
violations, detained him, handcuffed him, and put him in the back of a police
unit.  Meanwhile, Appellant=s
girlfriend signed a consent to search their apartment.  The police did not discover any evidence as
the result of that search.

Officer Charles Brady testified that he
participated in detaining Appellant and taking his statement.  Officer Brady testified that there were three
police vehicles and five officers present at the scene and that officers had
first located Appellant when they saw him get into a vehicle, which they then
stopped.  The officers drew their guns
and ordered Appellant from the vehicle. 
Appellant was ordered to the ground, handcuffed, and put into the back
of a police car for about an hour.  The
police officers were unable to confirm an outstanding warrant, however.

The evidence is conflicting regarding the taking
of Appellant=s statement.  Detective Hardy testified that Appellant Awas
asked if he would like to speak to detectives about this offense and he
voluntarily agreed to go with the officers.@  Brady testified that the officers removed the
handcuffs before they invited Appellant to the police station and speculated
that Appellant probably would not have been handcuffed during transport.








Appellant testified that after he was handcuffed
and place in the back of the police car, the officers told him he had a murder
warrant.  He testified that the officers
transported him to the police department in handcuffs, and he denied that he
was ever asked if he voluntarily wanted to give a statement.  Instead, he testified that he told the police
that he wanted to leave.  He testified
that a detective told him that if he would not help the police by giving a
statement, the detective would not help Appellant, and Appellant would go to
jail.  After he gave the statement,
Appellant was allowed to leave the police department.

                                       Motion
to Suppress








In his first point, Appellant contends that the
trial court erred by failing to suppress his statement that was obtained as a
result of an illegal arrest.  We review a
trial court=s ruling on a motion to suppress
evidence under a bifurcated standard of review.[2]  In reviewing the trial court=s
decision, we do not engage in our own factual review.[3]  The trial judge is the sole trier of fact and
judge of the credibility of the witnesses and the weight to be given their
testimony.[4]  Therefore, we give almost total deference to
the trial court=s rulings on (1) questions of
historical fact, even if the trial court=s
determination of those facts was not based on an evaluation of credibility and
demeanor, and (2) application‑of‑law‑to‑fact questions
that turn on an evaluation of credibility and demeanor.[5]  But when application-of-law-to-fact questions
do not turn on the credibility and demeanor of the witnesses, we review the
trial court=s rulings on those questions de
novo.[6]








Stated another way, when reviewing the trial
court=s ruling
on a motion to suppress, we must view the evidence in the light most favorable
to the trial court=s ruling.[7]  When the trial court makes explicit fact
findings, we determine whether the evidence, when viewed in the light most
favorable to the trial court=s
ruling, supports those fact findings.[8]  We then review the trial court=s legal
ruling de novo unless its explicit fact findings that are supported by the
record are also dispositive of the legal ruling.[9]

We must uphold the trial court=s ruling
if it is supported by the record and correct under any theory of law applicable
to the case even if the trial court gave the wrong reason for its ruling.[10]








The trial court apparently believed the testimony
of the police officers.  The trial court
entered findings of fact and conclusions of law in which the trial court
expressed his finding that the police officers= version
of the taking of Appellant=s
statement was true.  Taking as true the
police=s
assertion that Appellant voluntarily went to the police department, the
unrecorded statement that he provided was not the product of custodial
interrogation and was voluntarily given; that is, because he was not under
arrest at the time he gave the statement, and because any taint from the
illegal detention was attenuated by his voluntarily accompanying the police to
the police station, as the trial court found, the statement was not the product
of an illegal detention, and therefore the trial court was not required to
suppress the statement.[11]  We overrule Appellant=s first
point.

    Failure
to Declare a Mistrial After Evidence Appellant Had Been to Prison








In his second point, Appellant contends that the
trial court erred by denying his motion for mistrial after the jury heard testimony
during the guilt phase that he had been in prison. To preserve a complaint for
our review, a party must have presented to the trial court a timely request,
objection, or motion that states the specific grounds for the desired ruling if
they are not apparent from the context of the request, objection, or motion.[12]  The granting of a motion in limine does not
preserve error in the admission of evidence. 
The party must object when the evidence is offered at trial.[13]  Further, the trial court must have ruled on
the request, objection, or motion, either expressly or implicitly, or the
complaining party must have objected to the trial court=s
refusal to rule.[14]

Appellant complains of Crystal Sealy=s
testimony that Appellant had told her one of his tattoos meant that he would
die before he went back to prison. 
Appellant did not object to the testimony.  Crystal then discussed the tattoos on
Appellant=s right hand, his left hand, his
upper back, and across his shoulder blades, some of which indicated gang
affiliation.  Appellant still did not
object.  It was not until Crystal
testified about getting into a physical altercation with Appellant on the day
Sammie was killed that defense counsel finally objected and asked to approach
the bench.  Counsel then asked for a
mistrial because the witness was Agetting
into some other bad acts.@ 
There was a discussion about admonishing the witness not to discuss
extraneous bad acts.  Only after that
discussion did counsel object to Crystal=s
earlier testimony about Appellant=s having
been in prison as a violation of the rulings on motions in limine.

Because Appellant did not timely object to the
statement about prison, he has not preserved his complaint for review.  We overrule Appellant=s second
point.








                                             Conclusion

Having overruled both of Appellant=s
points, we affirm the trial court=s
judgment.

 

 

LEE
ANN DAUPHINOT

JUSTICE

 

PANEL:  DAUPHINOT, MCCOY, and MEIER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  June 18, 2009











[1]See Tex. R. App. P. 47.4.





[2]Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).





[3]Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no
pet.).





[4]Wiede v. State, 214 S.W.3d 17, 24B25 (Tex. Crim. App.
2007); State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), modified
on other grounds by State v. Cullen, 195 S.W.3d 696 (Tex. Crim. App. 2006).





[5]Amador, 221 S.W.3d at 673; Montanez
v. State, 195 S.W.3d 101, 108B09 (Tex. Crim. App. 2006); Johnson v. State,
68 S.W.3d 644, 652B53 (Tex. Crim. App.
2002).





[6]Amador, 221 S.W.3d at 673; Estrada
v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68
S.W.3d at 652B53.





[7]Wiede, 214 S.W.3d at 24; State
v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).





[8]Kelly, 204 S.W.3d at 818B19.





[9]Id. at 819.





[10]State v. Stevens, 235 S.W.3d 736,
740  (Tex. Crim. App. 2007); Armendariz
v. State, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied,
541 U.S. 974 (2004).





[11]Bell v. State, 724 S.W.2d 780, 787
(Tex. Crim. App. 1986), cert. denied, 479 U.S. 1046 (1987); Brown v.
Illinois, 422 U.S. 590, 604, 605, 95 S. Ct. 2254, 2262 (1975).





[12]Tex. R. App. P.
33.1(a)(1); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998)
(op. on reh=g), cert. denied, 526
U.S. 1070 (1999).





[13]Wilkerson v. State, 881 S.W.2d 321, 326
(Tex. Crim. App.), cert. denied, 513 U.S. 1060 (1994); Gonzales v.
State, 685 S.W.2d 47, 50 (Tex. Crim. App.), cert. denied, 472 U.S.
1009 (1985).





[14]Tex. R. App. P.
33.1(a)(2); Mendez v. State, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).