

## NUMBER 13-13-00191-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

MARTIN NAVA LARA,                                                                 Appellant,

v.

THE STATE OF TEXAS,                                                                Appellee.

## On appeal from the 21st District Court
## of Bastrop County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Memorandum Opinion by Justice Rodriguez**

A jury convicted appellant Martin Nava Lara of continuous sexual abuse of a child.[1]

*See* TEX. PENAL CODE ANN. § 21.02 (West, Westlaw through 2013 3d C.S.).   The jury

---

[1] This case is before the Court on transfer from the Third Court of Appeals in Austin pursuant to an order issued by the Supreme Court of Texas.   *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2013 3d C.S.).

assessed Lara's punishment at twenty-five years in the Texas Department of Criminal Justice—Institutional Division.   By one issue, Lara contends that the trial court abused its discretion when it admitted his videotaped statement and its accompanying Spanish to English translation transcript and that this abuse of discretion caused him harm.   We affirm.

## I.  BACKGROUND[2]

Lara, then twenty-three, was arrested for the offense of continuous sexual abuse of a child based on a relationship he had with thirteen-year-old A.B.[3]   According to A.B.'s testimony, Lara and A.B. had sex "many times" between February 2011 and June 2011. Lara and A.B. exchanged text messages.   A.B.'s mother discovered the messages a few weeks after the last sexual encounter.

### A.  The Interview

Lara was arrested and subsequently interviewed by Investigator Arnold Gonzalez with the Bastrop County Sherriff's Office.   Investigator Gonzalez conducted this custodial interview in Spanish.   The State offered a recording of the interview into evidence, and Lara objected, in relevant part, as follows:

> [Defense Counsel]:  Your Honor, this is all in Spanish, so unless it's—unless it's done in conjunction with the transcribed English version, I would object.
>
>        . . . .

---

[2] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it.   *See* TEX. R. APP. P. 47.4.

[3] To protect the child's privacy, we refer to the child by her initials.   *See* TEX. R. APP. P. 9.8; *see also* TEX. CODE CRIM. PROC. ANN. art. 57.02(h) (West, Westlaw through 2013 3d C.S.).

2

[Defense Counsel]: Your Honor, if I might, I'm not opposed to a DVD of an interrogation if it was done properly and the proper predicate was laid, but to have a jury that doesn't speak Spanish see something—I can shake my head yes and say "no" all day long, and I can shake my head ["]no["] and say "yes" all day long. It is imperative that the entirety of the context of what was said, how it was said, is explained to the jury. To have the jury, who doesn't know—to watch a Spanish video for English speaking only— and no one here is qualified. I imagine we have some people here who may speak some Spanish. There is no way that a proper instruction can be given to a jury not to interpret or attempt to interpret what he is saying, what he means by his expressions. Really, it's your words in conjunction with your—with your actions, as well as your body, your tone. That is— The entirety of that is how we comprehend one another. It would be highly prejudicial to show something that no one understands.

[The State]: Actually, Your Honor, if you could turn to Page 10 in [*Peralto v. State*, 338 S.W.3d 598, 604–05 (Tex. App.—El Paso 2010, no pet.)]— the Court specifically addressed that issue that Defense Counsel is laying, and gives the Court a suggested instruction regarding the fact that an official transcription and translation of the interview will be provided to them at a later date, which is the State's intention. But the Court again here tells that it was imperative that the jury be able to see both the actual interview, the context and the exact words that were used. So the State would agree completely with Defense Counsel and say that it is important that the jury be able to see what is said by the defendant and the investigator, as addressed here on Page 10 in this Court of Appeals decision.

Outside the presence of the jury, the trial court admitted the recording into evidence, over Lara's objections, and provided the following basis for its ruling:

The Court: All right, the Court is going to overrule the objection. Under this [*Peralta*] finding, it says that it's not—the [trial] court is not required to provide contemporaneous translation by a live interpreter—or a written one, for that matter—of a videotaped confession. At the same time they will be provided it at a later time, and they will also have the ability, when they are deliberating, to review the tape and the translation at the same time.

But this is just for the purposes of demonstrating the method by—or just showing the statement as it's taped. And that's fine, and I will instruct the jury. So I'm overruling the objection, and I'm going to admit [the recording].

3

When the recording was produced to the jury, the trial court informed the jury of the following:

> And I'm going to specifically instruct the members of the jury that I want you to make sure that you understand the purpose of showing you the video is not so that you can interpret it for yourself. There is going to be an official translation, and that will be the official translation. The purpose of the video being shown at this time is solely so that you can see the video, see what they were doing, the tone of voice, and those kind of things. You will have the official translation, and that will be the official translation, not any interpretation that you might have. Understood? (Members of the jury nodding.)

Lara did not object to the trial court's instruction. As discussed below, the trial court later admitted, without objection, a transcript of the Spanish to English translation of the interview, which the State proved up as an accurate transcription and translation of the interview. The trial court did not purport to admit this interpretation as the official translation, and the trail court's earlier statement in no way prevented Lara from objecting to its admission.

## B. The Translation Transcript of the Interview

It is undisputed that the State received the translation transcript of the recording of Lara's interview on February 6, 2013 and provided it to Lara's trial counsel that morning. On February 12, 2013, during a hearing on Lara's motion in limine, a discussion of the transcript occurred. At that time, Lara's counsel informed the trial court that his court-appointed interpreter had translated a Spanish word in a different manner than Rosario Figueroa, the interpreter contracted by the State to translate and transcribe Lara's interview. Lara's court-appointed interpreter translated the word or words as "sleep," while Figueroa translated the word or words as "sleep together." Lara's counsel

4

explained to the trial court that he had requested a copy of the transcript earlier, but had "just got it.   So [he felt] that it prejudice[d his] client not to have someone authorized and competent, qualified and accepted by the [c]ourt, to . . . [rely on what his court-appointed interpreter told him]."

At this hearing, the trial court noted that the State would be calling its interpreter and that he would be subject to Lara's cross-examination.   The trial court also emphasized that it would not be proper for Lara to call his interpreter as a witness when the court had appointed him to assist Lara generally.   While agreeing with the trial court that it was inappropriate to call his court-appointed interpreter as a witness, Lara's counsel commented, "I just don't want to be at a loss to be able to raise a valid objection because of the inability of my client to speak English."[4]

During Figueroa's direct-examination when the State offered a copy of the transcribed translation as an exhibit, Lara's counsel informed the trial court that he had "[n]o objection" to its admission.   And Lara did cross-examine Figueroa regarding the interpretation of the challenged word or words.[5]

---

[4] It is unclear as to what objection counsel is referring by this comment.

[5] Lara's attorney cross-examined Figueroa, in relevant part, as follows:

Q.     I can't pronounce it, so I'm going to tell you this, at 198, and it is the last six words in 198.   Can you read, starting where I've highlighted?

A.     [[P]ero si se durmieron juntos, ¿verdad?]

Q.     And you've translated that as:   But you guys did sleep together, right?

       With a question mark.

A.     Correct.

       . . . .

5

## II. SPANISH TO ENGLISH TRANSCRIPTION OF VIDEOTAPED STATEMENT

By his sole issue, Lara contends that the trial court abused its discretion in admitting the Spanish to English translation transcript of his videotaped statement into evidence.[6] The State asserts that Lara waived any objections he has to the admission of this translation transcript. We agree with the State.

### A. Motion-In-Limine Hearing

During the motion in limine hearing, Lara's counsel informed the trial court that his interpreter's translation of certain words differed from translation provided by the State's interpreter. He also appeared to make a lack-of-notice argument when he referenced

---

Q.    Thank you.
        Let's talk specifically about your translation of "sleep together."

A.    Uh-huh.

    . . . .

Q.    Does that—in your mind, based on your education, experience, and training and certifications does that literally say, "We slept together," or just say, "Did you sleep"? . . . I'm trying to find out whether, during the course of this, and including this particular passage, if the question literally says, "Did you sleep," versus what it says here, "But you guys did sleep together?"

        Can you point out to me which word in there means "together"?

A.    Juntos.

Q.    "Juntos" means together?

A.    Yes.

[6] Lara also generally contends that the trial court abused its discretion when it admitted his videotaped statement over objection, which was "Your Honor, [the videotaped statement] is all in Spanish, so unless it's—unless it's done in conjunction with the transcribed English version, I would object." Yet Lara does not support this contention with clear and concise arguments and with appropriate citations to authorities. *See* TEX. R. APP. P. 38.1(i); *Rhoades v. State*, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996) (en banc reconsideration) ("It is incumbent upon counsel to cite specific legal authority and to provide legal argument based upon that authority."). So we conclude that Lara's generalized contention regarding the admission of the recording is inadequately briefed and waived. *See* TEX. R. APP. P. 38.1(i); *see also Tufele v. State*, 130 S.W.3d 267, 271 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

his recent receipt of the transcription. The trial court acknowledged his concerns, responding that it could hold a hearing outside the presence of the jury during the interpreter's testimony and that Lara would have an opportunity to cross-examine this witness. *See* TEX. R. APP. P. 33.1(a)(2); *Mendez*, 138 S.W.3d at 341. Yet the trial court did not rule on these motions, if any. And even had the trial court granted such motions in limine, it would not have preserved error for our review. *See Geuder v. State*, 115 S.W.3d 11, 14–15 (Tex. Crim. App. 2003); *Gonzales v. State*, 685 S.W.2d 47, 50 (Tex. Crim. App. 1985). "For error to be preserved with regard to the subject matter of the motion in limine it is absolutely necessary that an objection be made at the time when the subject is raised during the trial." *Gonzales*, 685 S.W.2d at 50. And, as discussed below, Lara made no such objections.

## B. Trial Objections

To preserve a complaint for appellate review, a party must make a timely, specific objection in the trial court. *See* TEX. R. APP. P. 33.1(a). More specifically, a party's objection must state "the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A). And the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. *Id.* at R. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004) (en banc) (same).

At trial, when the State offered the videotaped statement as an exhibit, Lara's counsel stated, "Your Honor, this is all in Spanish, so unless it's—unless it's done in

7

conjunction with the transcribed English version, I would object." Lara's objection to the admission of the recording seemingly requested that the trial court admit the videotaped statement but only if it admitted the transcribed English version with it. And during Figueroa's testimony, when the transcription was offered and admitted as State's Exhibit 22, Lara did not object. Lara also had the opportunity to cross-examine Figueroa regarding the translation transcript and, specifically, regarding the complained-of words in the transcript. Also at trial, Lara did not object on the basis of any deficiency by the State with regard to Texas Rule of Evidence 1009, arguments he now makes on appeal. *See* TEX. R. EVID. 1009 (addressing the translation of foreign language documents and the admission of the translation at trial). Because Lara did not make timely, specific objections in the trial court regarding these matters, he did not preserve error for our review. *See* TEX. R. APP. P. 33.1(a).

## C. Argument That Objections Would Have Been "Pointless"

While acknowledging that he failed to object to the admission of the translation transcript, Lara nonetheless argues that "such objection would have been pointless" because of the following:

- Trial counsel received the translation only five days before trial and had informed the court of such;

- The trial court had already ruled that the translation was admissible over Lara's objection to the admissibility of the Spanish language recording; and

- Lara did have an interpreter whose sole responsibility was to interpret into a language that Lara understood.

Without more, we are not persuaded by this argument.

8

As explained above, Lara made no Rule 1009 objection at trial complaining about when he received the transcription translation. *See id.*; *see also* TEX. R. APP. P. 33.1. Although Lara complains that he "had no opportunity to seek out his own translation to verify the accuracy of the translation given the five day window from which he received the translation and the beginning of trial," our review of the record reveals no such request by Lara to seek his own translation and no such objection specific to the timeframe about which he now complains. *See* TEX. R. APP. P. 33.1(a)(1)(A). And Lara did not object that the trial court was commenting on the weight of the evidence when it orally instructed the jury that "there is going to be an official translation, and that will be the official translation. . . . You will have the official translation, and that will be the official translation, not any interpretation that you might have." TEX. R. APP. P. 33.1(a). Finally, although Lara commented on the absolute necessity of the court-appointed trial interpreter whose sole responsibility was to interpret into a language that Lara understood, Lara's objection, if any, that he did not have a second interpreter who could testify as a witness regarding the interpretation of the transcript was not sufficiently specific to make the trial court aware of his complaint. *See* TEX. R. APP. P. 33.1(a)(1)(A). In addition, the trial court did not rule on any objection involving this concern. *See id.* at R. 33.1(a)(2); *Mendez*, 138 S.W.3d at 341.

## B. Summary

Because Lara's motions in limine did not preserve error for our review, because Lara did not object at trial to the admission of the transcribed translation, because his objections, if any, were not timely or were not specific enough to make the trial court aware of his complaints, and because any objections were not ruled on by the trial court,

we conclude that Lara has not preserved error for our review.  We overrule Lara's sole issue on appeal.

### III. CONCLUSION

We affirm the judgment of the trial court.


NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
24th day of April, 2014.

10